THOMPSON, J. This case involves the same legal question as the one in case No. 24533, Drewes & Co. against the same defendants, this day decided (ante, p. 861, 103 So. 241).

For the reasons assigned in the opinion in said cause, the judgment appealed from herein is reversed, the motion to dissolve the injunction is overruled, and the case is remanded to the civil district court to be proceeded with according to law. The appellee to pay costs of this appeal.

ROGERS, J., recused.

---

(103 So. 247)

No. 25834.

### THOMPSON et al. v. SOCIÉTÉ CATHOLIQUE D'EDUCATION RELIGIEUSE ET LITTERAIRE.

(Nov. 3, 1924. On Rehearing, March 2, 1925.)

*(Syllabus by Editorial Staff.)*

1. Charities ⊕10—Donations to trustees for benefit of institutions, designed to promote education, literature, or charity, permissible.

In view of Act No. 124 of 1882, donations and bequests to trustees for benefit of institutions, designed to promote education, literature, or charity, are permissible.

2. Husband and wife ⊕265—Husband's conveyance of community property to society of religious and literary education held not void as purely gratuitous.

Husband's conveyance of community property to Catholic society of religious and literary education "under title of a conditional donation," to be used exclusively for educational purposes under direction and control of Jesuit Fathers, *held* not in violation of Civ. Code, art. 2404, not being purely gratuitous donation within article 1523(1), but onerous donation or contract within article 1524, and hence, like remunerative donations under article 1525, not subject, under article 1526, to rules applicable to donations inter vivos, unless value exceeds half of charges imposed.

3. Gifts ⊕34—Donations; donor may impose any charges or conditions not contrary to law or good morals.

Under Civ. Code, art. 1527, donor may impose on donee any charges or conditions he pleases, if not contrary to law or good morals.

### On Rehearing.

4. Gifts ⊕34—Donations; charge or burden imposed need not be in donor's favor to make "donation onerous."

To make "donation onerous," within Civ. Code, art. 1524, charge or burden imposed by donor need not be in his favor, but may be in favor of third person, class of persons, or general public, in view of articles 1774, 1890.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Onerous Donation.]

5. Charities ⊕24—Presumption that class of persons or public, in favor of which charge or burden is imposed by donor, accepts advantage.

Presumption is that large class of individuals or public, in favor of which charge or burden is imposed by donor, accepts advantage.

O'Niell, C. J., dissenting.

Appeal from Civil District Court, Parish of Orleans; Wynne G. Rogers, Judge.

Suit by Mrs. Annie Tatman Thompson and others against the Société Catholique d'Education Religieuse et Litteraire. Judgment

for defendant, and plaintiffs appeal.  Affirmed.

Thomas E. Furlow, of New Orleans, for appellants.

Charles I. Denechaud, Charles J. Theard, and Delvaille H. Theard, all of New Orleans, for appellee.

THOMPSON, J.  The plaintiffs are the widow and the forced heirs of Philip Thompson, who died in this city on April 21, 1917. They bring this suit to annul a certain instrument executed by said Thompson in favor of the defendant on December 30, 1889, conveying certain described property situated in this city, this property being community property between said Thompson and his said wife.

As the character of the instrument and its legal effect is the sole question in the case, we shall insert here the pertinent provisions, omitting the description of the property and unimportant details:

"That in consideration of the interest he [Thompson] takes in the education of the children of this community and in the promotion of learning, he does by these presents, convey, transfer, assign, set over and deliver under title of a conditional donation, unto the Société Catholique d'Education et Litteraire, domiciled in this city and duly incorporated under and by virtue of an act of the legislature approved April 30, 1847," * * * etc.

"The estimated value of the said property is seventy five hundred dollars."

"To have and to hold the same unto the said donee, its successors and assigns forever by virtue hereof, subject to the following expressed terms, conditions and stipulations, to wit:

"1. That said property shall be used exclusively for educational purposes.

"2. That said school shall always be under the direction and control of the Jesuit Fathers.

"3. That in case the said property shall at any time cease to be so used, or shall cease to be under the control of the Jesuit Fathers, ipso facto, it shall revert to said Philip Thompson, or his heirs."

"It is further agreed and understood however, that the said donee shall have the right to sell, dispose of or lease the property presently donated, in case that at any future time another location for the school should become necessary, in which event, the proceeds of the sale of said property or any other property in which said proceeds may be invested shall revert to the donor, or his heirs under the above conditions just the same as the property herein donated would do if not alienated."

The act was accepted by the Right Reverend John O'Shanahan, president of the defendant corporation.

It is admitted in the petition that the defendant went into actual possession of the property immediately after the act of so-called donation, and has continued in such possession without interruption, making use of said property for the purposes intended by the grantor.

There is no charge of nullity or of irregularity as to form.  There is no intimation that the husband contemplated the perpetration of any fraud on the rights of his wife. There is no suggestion that the charges and conditions imposed on the grantee were not equivalent to, or were of less money value than, the value of the property conveyed.

[1] The plaintiffs do not question the capacity of the donor to make, or of the donee to accept, the donation for the object and purpose recited in the act.  Indeed, such a contention could not be made in view of Act 124 of 1882.

"Donations and bequests are permissible to trustees for educational, charitable, or literary purposes, or for the benefit of institutions, existing or to be founded, the object of which is to promote education, literature, or charity." Successsion of Meunier, 52 La. Ann. 80, 26 So. 776, 48 L. R. A. 77.

In the charter of defendant corporation the declared object of the corporation is:

" * * * For the purpose of establishing and conducting colleges, schools, and other literary and scientific institutions in this state, and building and maintaining churches of the Roman Catholic faith, under the name of Catholic Society of Religious and Literary Education."

[2] The particular ground of nullity alleged by the plaintiffs is, that the instrument on its face evidences a gratuitous donation in violation of article 2404 of the Civil Code, which declares that the husband can make no conveyance inter vivos by a gratuitous title of the immovables of the community, unless it be for the establishment of the children of the marriage. From which it is argued that the act as a donation was null ab initio for the whole of the property attempted to be conveyed.

The contention assumes that the conditions, charges, or burdens stipulated and imposed upon the alleged donee were not such as to constitute the donation an onerous one and to take it out of the category of a gratuity or liberality. If this assumption as a matter of fact or of law were true, then the authorities cited and discussed so elaborately in the brief of plaintiff's learned counsel would be applicable, at least to the extent of the widow's interest and the legitime of the forced heirs. See Snowden v. Cruse et al., 152 La. 144, 92 So. 764, and authorities therein cited.

As our appreciation of the legal effect and binding force of the instrument under attack is so at variance with the views of the plaintiff's learned counsel, we do not deem it necessary to discuss nor to attempt an analysis of the numerous authorities cited which pertain to donations which are such, pure and simple, and have no application or pertinence to those so-called donations, designated as onerous donations, which are governed by different rules and principles altogether. The Code speaks of three kinds of donations inter vivos:

(1) The donation purely gratuitous, or which is made without condition and merely from liberality.

(2) The onerous donation, or that which is burdened with charges imposed on the donee.

(3) The remunerative donation, or that the object of which is to recompense for services rendered. Civil Code, art. 1523.

After having so defined, as it were, the three classes of donations inter vivos, it is declared that the onerous donation is not in reality a donation at all, if the value of the object given does not manifestly exceed that of the charges imposed on the donee. C. C. 1524.

And the same is true with respect to the remunerative donation, if the value of the services to be recompensed thereby, being appreciated in money, should be little inferior to that of the gift. C. C. 1525.

"In consequence, the rules peculiar to donations inter vivos do not apply to onerous and remunerative donations, except when the value of the object given exceeds by one-half that of the charges or of the services." C. C. 1526.

In view of the above plain provisions of the Code, it is perfectly obvious that the instrument at issue upon its face shows that the donor never intended to make a gratuitous and unconditional donation—an act of liberality pure and simple. On the contrary, it is declared in the very beginning of the instrument that the conveyance was "under title of a conditional donation," the terms, conditions, and stipulations being expressly stated. In the face of these recitals of the act we are unable to conceive by what process of reasoning it can be said that the act was without charge or condition on the donee, and was a simple donation or liberality as defined in the first paragraph of article 1523, C. C.

That the provisions that the property should be used exclusively for educational purposes by the donee and that the school should always be under the direction and control of the Jesuit Fathers, were conditions, charges, and burdens imposed upon the donee, within the contemplation and meaning of the articles of the Code, can hardly be gainsaid. That they were conditions and charges which the donor had the right to

impose and the donee had the legal right to assume is not open to controversy. The conditions and charges thus imposed and exacted of the donee impresses upon the donation the character of an onerous donation, or, more properly speaking, an onerous contract, and is not subject to the rules peculiar to real gratuitous donations.

"An onerous donation, when the value of the thing given does not exceed by one-half that of the charge imposed, is not subject to the rules prescribed for donations inter vivos; and an action for its dissolution must be governed by the rules relating to ordinary contracts." Pugh v. Cantey, 33 La. Ann. 786; Succession of Dopler v. Feigel, 40 La. Ann. 848, 6 So. 106.

[3] The rule is well settled that a donor may impose on the donee any charges or conditions he pleases, provided they contain nothing contrary to law or good morals. C. C. 1527; Voinche v. Town of Marksville, 124 La. 712, 50 So. 662.

There was certainly nothing contrary to law or good morals in the donation under consideration, and the donor had the legal right to designate the object to which he desired that the property should be devoted, and, when he charged that the donee should use the said property for educational purposes, he was imposing a condition, a burden on the donee, that took the transaction without the rule governing gratuitous donations inter vivos.

Our conclusion is that the instrument sought to be annulled is an onerous contract, within the meaning of Civil Code, art. 1524, and is not subject to the rules governing donations purely gratuitous. This fact appearing upon the face of the petition and the annexed instrument, the exception of no cause of action was properly sustained.

The judgment appealed from is therefore affirmed, at the costs of plaintiffs appellants.

ROGERS, J., recused.

## On Rehearing.

OVERTON, J. A reconsideration of this case satisfies us that the provision in the act of conveyance herein, to the effect that the property donated should be used exclusively for educational purposes, and that the school to be maintained on it should be always under the direction and control of the Jesuit Fathers, imposes conditions, charges, and burdens upon the donee. The more serious question, however, in our view, is: Are the conditions, charges, and burdens such as to make the donation, in reality, an onerous one within the contemplation of the Civil Code?

[4] It was strenuously urged on the application for a rehearing that the conditions and charges mentioned are not such as to make the donation onerous, in that they did not and could not inure peculiarly to the benefit of the donor as the head and master of the community of acquets and gains that existed between him and his wife, and, as that community received nothing in return for the donation, that the donation cannot be considered as onerous but merely as gratuitous, within the contemplation of the Code. This position, taken by plaintiffs on the application for a rehearing, caused doubts to arise in the minds of at least a majority of us, and a rehearing was therefore granted. A reconsideration of the case, however, satisfies us that the charge or burden, to make the donation an onerous one, need not be one in favor of the donor, but it may be one in favor of a third person, or even of the public or the community at large. We think this follows from the following articles of the Civil Code, to wit:

"Article 1774. Any thing given or promised as a consideration for the engagement or *gift*, any service, interest or condition, imposed on what is given or promised, although unequal to it in value, makes a contract onerous in its nature. * * *

"Art. 1890. A person may also, in his own name, *make some advantage for a third person*

*the condition or consideration of a* commutative contract, or *onerous donation;* and if such third person consents to avail himself of the advantage stipulated in his favor, the contract cannot be revoked." (Italics ours.)

[5] Hence we think it follows that it is not necessary that the charge imposed be in favor of the donor, but may be one in favor of a third person, whether in favor of a single individual, a class of persons, or the general public. Where the charge or burden imposed is in favor of a large class of individuals or of the public, the presumption is that such class or the public accepts the advantage. In this instance, the property has been used for school purposes, in accordance with the terms of the donation, for a number of years.

For the reasons assigned, it is ordered that our original opinion and decree herein be reinstated and made the judgment of this court.

ROGERS, J., recused.

O'NIELL, C. J. (dissenting). Article 2404 of the Civil Code forbids a man to give away his wife's share of the property belonging to the marital community. Article 1493 of the Code forbids a person to give away his property to the prejudice of his forced heirs—or beyond the disposable portion. The purpose, of course, is to protect the wife or widow and heirs. Accordingly, under article 1526, this rule, which forbids a man to make a donation to the prejudice of his wife or forced heirs, does not apply to an onerous donation if the value of the charges imposed upon the donee amount to more than half of the value of the property donated. The reason for this exception to the rule is that an onerous donation is regarded not as a donation at all, but as a commutative contract "if the value of the object given does not manifestly exceed that of the charges imposed on the donee." Article 1524. The idea is that, "if the value of the object given does

not manifestly exceed that [meaning the value] of the charges imposed on the donee," the wife, as partner in community, or the forced heirs, as the case may be, are not imposed upon, because they are compensated with the value of the charges imposed on the donee. That means, of course, charges imposed in favor of the donor—not charges "in favor of a third person, or even of the public, or the community at large," as the majority opinion in this case holds.

I cannot reconcile my mind to the proposition that, although the Code says that a man cannot by donation, deprive his wife or widow of her share of the community property, or deprive his forced heirs of their legitime, nevertheless a man may, by donation, deprive his wife or widow of her share of the community property, and deprive his forced heirs of their legitime, provided he imposes upon the donee a charge "in favor of a third person, or even of the public, or the community at large." How is the wife or widow, or the forced heir, of the donor, protected or compensated by a charge being imposed by the donor upon the donee "in favor of a third person, or even of the public, or the community at large"—as the author of the majority opinion expresses it?

The court has confused the onerous donation with what is called a donation for pious uses. Donations or legacies for pious uses "are those which are destined to some work of piety, or object of charity and have their motive independent of the consideration which the merit of the legatees [or donees] might procure to them." Domat, lib. 4 tit. 2, § 6, No. 2. "The term 'pious uses' includes not only the encouragement and support of pious and charitable institutions, but those in aid of education and the advancement of science and the arts." State v. Executors of McDonough, 8 La. Ann. 246, citing Makelday on the Roman Law, No. 145. See, also, N. O., M. & C. R. Co. v. City of New Orleans, 26 La. Ann. 490; Succession

of Meunier, 52 La. Ann. 87, 26 So. 776, 48 L. R. A. 77; Act 124 of 1882.

The donation in this case was not even a donation for pious uses, because the stipulation that the property should be used for educational purposes did not require or mean that it had to be used for free or public education.

But that is not the point, for, even if this donation had been a donation for pious uses, it would have been none the less a gratuitous donation, not an onerous donation. The articles of the .Code make it as plain as can be that an onerous donation is one in which the burden imposed upon the donee is in favor of the donor—not "in favor of a third person, or even of the public, or the community at large." What other meaning can article 1524 have, when it compares the value of the object given with the *value* of the charges imposed? Why speak of the *value* of the charges imposed if the charges be not in favor of the donor? And what other meaning can article 1773 have, viz.:

"To be gratuitous, the object of a contract must be to benefit the person with whom it is made, *without any profit or advantage, received or promised as a consideration for it.* It is not however the less gratuitous, if it proceed either from gratitude for a benefit before received, or from the hope of receiving one hereafter, although such benefit be of a pecuniary nature." (The italics are mine.)

It seems to me that what this court said in Bister v. Menge, 21 La. Ann. 217, which was very much like this case, ought to decide this case, viz.:

"Article 2373 [now 2404] of the Civil Code obviously limits the power of the husband to dispose of the real estate of the community to acts of alienation by sale or otherwise, *where an equivalent in value is impliedly received for the community property disposed of.*
"The second paragraph of that article strictly prohibits him from making any conveyance inter vivos of the immovables of the community by gratuitous title. The fourth paragraph construed in connexion with the second, can only be taken to contemplate a recourse of the wife against the heirs of the husband in cases where he has alienated the immovables of the com-

munity by onerous title in fraud of her rights. *The case of the disposal of the immovables of the community by gratuitous title is provided for in the second paragraph by absolute prohibition. The prohibition is unconditional and wholly independent of the interest of the husband in making the donation."* (The italics are mine.)

Even the Act 124 of 1882, which declares that the laws against fidei commissa and prohibited substitutions shall not apply to donations or legacies in favor of educational, charitable, or literary institutions, says in its title "that nothing in this act shall be construed to affect the law in regard to the disposable portion." And, in fact, there is nothing in the statute that could be construed as allowing a man to make a donation of his wife's share in the .community property, or a donation of the legitime reserved to his forced heirs.

Stated broadly, but accurately, the doctrine of the majority opinion is this: A man cannot give away his wife's share of the community property, or his forced heirs' legitime, by a donation in favor of some one else, unless he imposes upon the donee a charge in favor of a third party; but, if he does that, he may give away his wife's share of the community property and his forced heirs' legitime, by making both the donation and the charge in favor of outsiders. That could not have been the intention of the writers of the Code.

The reference to article 1890 of the Civil Code does not strengthen the decision in this case. The article merely means and declares that, where a person makes an onerous donation, legally, as, for example, when he does not give away his wife's share of the community property or his forced heirs' legitime, he may impose upon the donee a charge or stipulation in favor of a third person, just as he may do in a commutative contract. Here is the language of the article, viz.:

"A person may also, in his own name, make some advantage for a third person the condi-

tion or consideration of a commutative contract, or onerous donation; and if such third person consents to avail himself of the advantage stipulated in his favor, the contract cannot be revoked."

That does not mean that, by making a stipulation in favor of a third person, a man may give away his wife's share of the community property or his forced heirs' legitime. As far as the wife and the forced heirs are concerned, the donor's making a stipulation in favor of a third person does not make the donation less gratuitous.

It seems to me there are two errors in the majority opinion in this case. The first error—and the least important—seems to be in regarding the donation in contest as a donation for pious uses. The second error is in holding that a donation for pious uses —or a donation containing a stipulation or charge in favor of a third person—is not a gratuitous but an onerous donation. It is a gratuitous donation as far as the donor and his partner in community and his forced heirs are concerned. The law favors and encourages philanthropic donations—donations for pious uses, as they were known in the civil law—but it does not allow, much less encourage, a man to be philanthropic with his wife's share of the community property, or with his forced heirs' legitime.