340 So.2d 1067 (1976)
Richard E. HUGHES
v.
EAGLE TRUCKING CO. et al.
No. 11020.
Court of Appeal of Louisiana, First Circuit.
December 20, 1976.
*1068 Donald G. Cave, Baton Rouge, for plaintiff-appellant Richard E. Hughes.
John B. Noland, Baton Rouge, for defendant-appellee Eagle Trucking Co. and Continental Ins. Co.
Paul Marks, Jr., Baton Rouge, for defendant-appellee Getty Oil Co.
Frank M. Coates, Jr., Baton Rouge, for defendant-appellee Fred Wilson Drilling Co., Inc. and Highlands Underwriters Ins. Co.
Before LANDRY, COLE and CLABORNE, JJ.
LANDRY, Judge.
Plaintiff (Appellant), appeals from judgment granting a motion for summary judgment in favor of defendant, Getty Oil Company (Getty), dismissing Appellant's claims against Getty for personal injuries resulting from an accident which occurred while a truck was unloading pipe at one of Getty's oil wells. The trial court did not assign reasons for its judgment. It appears, however, that based on the issues raised in the trial court, the motion was granted on the finding that the pleadings and depositions show that the persons engaged in unloading the pipe at the time of the accident were not agents or employees of Getty, neither were they "borrowed servants" of Getty as alleged by Appellant. We reverse.
Getty concedes that the well in question was being drilled by Fred Wilson Drilling Company, (Wilson), an independent drilling contractor over whose employees Getty neither exercised nor possessed control. Getty acknowledges a contract with Wilson pursuant to which Getty was obligated to purchase all materials, equipment and supplies necessary to drill the well, including the pipe which was being unloaded and which Getty admittedly purchased. Getty denies, however, that either Eagle Trucking Company, (Eagle), which owned the float or flatbed trailer on which the pipe was transported, or Eagle's agent, Willis Catrett, who was driving the delivery rig, were Getty's agents or employees, borrowed or otherwise.
Wilson, Eagle and Catrett, as well as Eagle's and Wilson's insurers, are also made defendants herein. Appellant, who accompanied Catrett as a guest passenger, was seriously injured when three lengths of heavy pipe fell from the truck during the unloading process and pinned Appellant beneath.
Appellant's petition alleges Eagle and Wilson were negligent in failing to properly supervise the unloading process; failing to provide adequate employees to assist in the unloading; failing to provide proper and adequate equipment for unloading; and that Wilson was negligent in failing to provide a safe place for the truck to unload. Getty's negligence is alleged to be the same as that of Eagle and Wilson, to which is added the allegation that Getty failed to supervise its contractors, their employees and Eagle's driver, Catrett. In effect, Appellant contends Catrett and Wilson's employees present on the rig at the time of delivery, were Getty's borrowed servants for whose actions Getty is responsible.
Getty responded by alleging that none of its employees were negligent in any manner connected with the accident and that in fact *1069 none of its employees were near the truck during the unloading process. In addition, Getty third partied Wilson and invoked the provisions of a contract with Wilson which are quoted in Getty's answer and third party demand. These provisions recite that Wilson shall be an independent contractor in the performance of the work and shall not be acting as Getty's agent; that Wilson shall direct and control the work, Getty being interested in results only; and that Getty may designate a representative who shall at all times have access to the premises for the purpose of observing tests and inspecting the work performed under the contract. Additionally, Getty pled a contract clause obligating Wilson to hold Getty harmless from all claims for damage to persons or property arising out of, or in connection with, or resulting from Wilson's operations and to defend such actions and pay any judgments in any such actions.
Depositions of record disclose that on the day in question, Catrett's truck arrived at the well site between 3:00 and 5:00 A.M. After stopping his rig in the vicinity of the drilling platform, Catrett requested Appellant to go talk with one of the workmen on the drilling platform and find out where the pipe was to be unloaded. Appellant made inquiry of either Thibodaux or Davis (the depositions do not clearly establish which one). He was instructed to load the pipe on two pipe racks which were near Catrett's parked truck. Catrett, who had never before delivered pipe to an oil rig, positioned his truck between the racks and got out of the tractor. Appellant remained seated in the tractor cab. On instruction from Davis, Ogea and Darbonne and perhaps one other Wilson employee assisted Catrett in unloading the pipe.
Catrett's deposition shows that heavy boards were set in place to form a ramp of sorts from the float bed to the pipe rack on the left or driver's side of the loaded truck. Catrett was informed that the way to unload was to roll the joints of pipe down the "ramp" onto the rack. Catrett removed the pins on the left side of the float and also removed the binder chains. He then proceeded to remove the chocks under the bottom layer on the left, commencing with the chock nearest the cab and working toward the rear. After removing the last chock on the left side, he commenced prying with a bar to unload a single length of pipe. Instead of a single length, several joints of pipe rolled down the "ramp" on left and three joints simultaneously rolled off the float and onto the ground on the right side. Appellant, who did not participate in the unloading and who had gotten out of the cab for a breath of air, was pinned beneath the three joints of pipe which fell off the truck on the passenger side.
Depositions of record establish conclusively that Baudoin was asleep at the time of Catrett's arrival with the pipe. It is also shown that Baudoin was wakened by Davis who himself was aroused by a member of the drilling crew and informed of the pipe's arrival. It is further shown that when the accident occurred, Baudoin was getting dressed to go out where the pipe was to be unloaded. The depositions show positively Baudoin was nowhere near the truck when the accident occurred, and that he gave no orders or directions whatsoever as to where or how the pipe was to be unloaded.
Davis' deposition establishes that the pipe was ordered by Getty as well owner, which concern was responsible for furnishing all material and equipment needed for the drilling process. Davis was aware some pipe was expected to arrive on the job but he did not know where from or who was to do the hauling. He noted that it is customary in the oil industry for the delivering truck driver to unload pipe at a well site. He also noted that drilling crew members instruct the truck driver as to where the pipe is to be unloaded, but not how the unloading shall be done. He also noted that members of the drilling crew assume no responsibility for unloading, but do sometimes gratuitously assist the driver by helping in the removal of pins, chocks and binder chains. He meticulously noted, however, that responsibility for unloading is solely that of the delivering driver, over whom the *1070 drilling crew neither exercise nor possess any control whatsoever. Davis further deposed that Baudoin never gave him any instructions or orders as to how to unload pipe or how to do anything else. He also deposed that, as Getty's well site representative, Baudoin was interested in results only. He also stated that pursuant to the drilling contract between Wilson and Getty, the well site was built by Getty, who also prepared the location and furnished all material and equipment, but that Getty exercised no control over the manner in which the drilling process was conducted.
Depositions by the remaining crew members confirm Davis' averments as concerns the issue of Getty's alleged control over the actions of Wilson's crew. These depositions do show, however, that one member of the crew suggested to Catrett that a ramp be constructed from the float bed to the pipe rack when Catrett indicated he had no prior experience in such matters. These same depositions also show that one or two crew members assisted in the removal of pins and perhaps also assisted in removing chocks and binder chains.
Summary judgment process, which deprives a litigant of trial on the merits is not a substitute for trial. Magie v. Patio Motel, Inc., 301 So.2d 381 (La.App.4th Cir. 1974).
Summary judgment may not lie in any instance where a genuine issue of material fact remains unresolved. Carney v. Hartford Accident and Indemnity Co., 250 So.2d 776 (La.App.1st Cir. 1970).
In disposing of a motion for summary judgment, it is not the function of the court to determine the merits of issues raised, but merely to ascertain whether there is a genuine issue of material fact. Acadia-Vermilion Rice Irrigating Co. v. Broussard, 185 So.2d 908 (La.App.4th Cir. 1966).
The party moving for summary judgment bears the burden of establishing the complete absence of a genuine issue of material fact. Warden v. Southwest Louisiana Hospital Association, 300 So.2d 590 (La.App.3rd Cir. 1974).
All doubt must be resolved against the granting of a motion for summary judgment and in favor of trial on the merits to decide disputed material facts. Hobbs v. Fireman's Fund American Insurance Companies, 293 So.2d 608 (La.App.3rd Cir. 1974).
Where a genuine issue of material fact exists, summary judgment does not lie even though the trial court entertains grave doubt concerning respondent's ability to establish disputed facts. Butler v. Travelers Insurance Co., 233 So.2d 271 (La.App.1st Cir. 1970).
Appellant contends Getty is liable for the actions of Catrett and Eagle's employees because these parties were Getty's agents and servants, actual or borrowed. The depositions do not show the precise nature of the relationship between Getty and Eagle. From the pleadings and depositions we cannot say that there is no dispute as to the material facts concerning the relationship of Getty to Eagle's employees. Getty bears the burden of proof in this respect and has failed to discharge this onus.
The judgment is reversed and this matter remanded to the trial court for further proceedings consistent with the views herein expressed, Getty to pay all costs of this appeal.
Reversed and remanded.