371 So.2d 1346 (1979)
Patrice V. BERRY et al.
v.
Barbara Sue BERRY.
No. 12250.
Court of Appeal of Louisiana, First Circuit.
April 16, 1979.
Writ Refused June 11, 1979.
Ashton Stewart, Baton Rouge, of counsel for plaintiff-appellee, Patrice V. Berry et al.
Earl A. Morgan, Baton Rouge, of counsel for defendant-appellant, Barbara Sue Berry.
Before LANDRY, ELLIS, COVINGTON, LOTTINGER, CHIASSON, EDWARDS, PONDER, SARTAIN[*] and BAILES[*], JJ.
PONDER, Judge.
Defendant, Barbara Sue Berry, appealed from the judgment awarding plaintiff judgment on a contract containing a stipulation pour autrui between defendant, plaintiff's aunt, and Doss H. Berry, Jr., plaintiff's father.
The issues are:
(1) Was there a trust?
(2) Was there a contract containing a stipulation pour autrui?
*1347 We reverse.
Doss Berry, Jr., plaintiff's father, and Peggy Jr., Hilsmeyer Berry, plaintiff's mother, were divorced in 1971. Thereafter, Doss Berry, Jr., made his sister Barbara Sue Berry the beneficiary of life insurance policies totaling $59,500.00. Defendant testified her brother looked into the possibility of setting up a trust estate but decided against it because of the expense and the inflexibility. Instead, he told her he wanted her to pay his debts, care for their father, who was an invalid in a nursing home, and to "act as a backstop for the education of his two children." Miss Berry testified to these purposes in both a previous case[1] and the current case. In the latter she added the purposes of benefitting herself. At any rate defendant and one of her witnesses testified that Doss Berry, Jr., expressed his wish that she exercise her judgment in expending the funds.
After the death of her brother, defendant did pay his debts and did pay for some of their father's benefits. She advanced some money to Doss Berry, III, when he decided not to attend college as had been anticipated by the father. The relations between plaintiff and her mother on the one hand and the defendant on the other have been less than cordial. When plaintiff presented a list of expenses evidently made by her mother for attending an out-of-state school, defendant refused to advance any money saying that she owed obligations to three persons not just one person and that it was not intended that the money be used to defray all expenses of attending college. When there was no more contact between plaintiff and defendant, plaintiff in her fourth year in college filed suit asking that the arrangement be declared a trust and that all proceeds after the payment of the decedent's debts and the care of Doss Berry, Sr., be recognized as her and her brother's property. Peggy Jo Hilsmeyer Berry joined in the suit as the tutrix of Doss Berry, III. When the latter reached majority and did not want to be a plaintiff, he was joined as a defendant.
The lower court found that there was no trust but found a contract between Doss Berry, Jr. and his sister for plaintiff's benefit.
We agree that there was no trust. In the first place, it is clear that Doss Berry, Jr., did not want and did not intend to create a trust. Furthermore the requirements for an inter vivos[2] or testamentary[3] trust have not been met.
We disagree that a contract containing a stipulation pour autrui for plaintiff's benefit was confected between Doss Berry, Jr., and Barbara Sue Berry. To create a legal obligation enforceable by the beneficiary there must be certainty as to the benefit to accrue to the beneficiary. Miller v. Crusel, 135 La. 649, 65 So. 873 (1914). For statements of certainty required in all contracts, see Jones v. Janes, 156 La. 715, 101 So. 116 (1924); TAC Amusement Company v. Henry, 238 So.2d 398 (1970); Wright v. Mark C. Smith & Sons, La., 283 So.2d 85 (1973).
Indicative of the uncertainty of the "object" of the agreement between Doss Berry, Jr., and his sister are the following questions: what would be the amount of his debts; what would be the amount required to care for his father; would Doss Berry, III, attend college; what is meant by "education" of his children, for instance did he mean attendance at the most expensive of colleges and finishing schools or did he mean a business course at a local business college or beauty college; what was the extent of the obligation in view of his statement that the children would be drawing *1348 social security and getting help from the mother and grandparents; what is the extent of obligation to "backstop" other contributions to their education; what is defendant's obligation in view of Berry's statement that she use her good judgment.
Furthermore, we are convinced that Berry did not intend to enter a contract containing an enforceable stipulation pour autrui. He had rejected a trust because of its inflexibility. A contract with an enforceable stipulation pour autrui would be even more inflexible. While it is likely that Berry, a licensed and practicing Louisiana attorney, knew[4] of the statement in Fontenot v. Marquette Casualty Co., 258 La. 671, 247 So.2d 572 (1971), that a stipulation pour autrui must be in writing,[5] we do not base our decision thereon. Instead, we believe that he did not intend that the "arrangement" be a legally enforceable contract, much less one containing a stipulation pour autrui.
For these reasons the judgment of the lower court is reversed and there is now judgment rejecting plaintiff's demands at her costs both in this court and the lower court.
REVERSED AND RENDERED.
COVINGTON, J., dissents for written reasons assigned.
LANDRY, J., dissents for written reasons by COVINGTON, J.
COVINGTON, J., dissenting:
The nature of the case warrants a full discussion of the facts and the law.
This is a suspensive appeal by defendant, Barbara Sue Berry, from a judgment of the District Court in favor of plaintiff, Patrice V. Berry, in the amount of $2,800.00, with legal interest on $1,500.00 thereof from September 1, 1974, until paid, and with legal interest on $1,300.00 thereof from September 1, 1977, until paid. The judgment also reserved the right of Patrice V. Berry to bring further proceedings in this matter for any additional sums which may become due. The plaintiff has answered the appeal, asking for an increase in the amount awarded, for a declaratory judgment fixing her rights under the alleged contract, and for an order requiring the defendant to furnish security as trustee.
The facts show that Doss Berry, Jr. and Peggy Jo Hilsmeyer Berry were married on August 16, 1952. They adopted two children, Patrice V. Berry and Doss Berry, III. During the period of 1971 and early 1973, Doss Berry, Jr., who was an attorney and member of the Louisiana State Bar employed by the Ethyl Corporation, had a Metropolitan Life Insurance Company policy on his life in the amount of $49,500.00, and a Veteran's Administration (National Service Life Insurance) policy on his life in the amount of $10,000.00. During most of this time the beneficiary of the Metropolitan Life policy was his wife, Peggy Jo Hilsmeyer Berry, and the beneficiary of the Veteran's Administration policy was his mother, Grace Vaughan Berry.
Doss Berry, Jr. and Peggy Jo Hilsmeyer Berry were divorced on June 22, 1971. Thereafter, on April 18, 1972, Doss Berry, Jr. changed the beneficiaries of both policies, naming his sister, Barbara Sue Berry, pursuant to an arrangement by which she agreed to pay her brother's just debts, care for their elderly father, and see to the education of the Berry children, and Doss Berry, Jr. agreed to name his sister the beneficiary of his insurance. The next year, on March 22, 1973, Doss Berry, Jr. died, leaving an estate inherited by his children valued at $2,245.06, with debts of $7,808.18.
Shortly after the death of Doss Berry, Jr., Barbara Sue Berry, the defendant herein, collected the $59,500.00 proceeds of the two life insurance policies. She also collected the funds, as named beneficiary, of Berry's retirement and savings plans with his employer amounting to $4,490.12. The former *1349 wife of Doss Berry, Jr., individually and as tutrix of the two minor children, successfully sued Barbara Sue Berry for these funds, and the matter concerning the retirement and savings plans funds is no longer an issue. See Berry v. Equitable Life Assurance Society of U. S., 316 So.2d 399 (La. App. 1 Cir. 1975). In addition, the former wife sued the insurer for the insurance proceeds. In Berry v. Metropolitan Life Insurance Company, 327 So.2d 521 (La.App. 1 Cir. 1976), this Court held that the designation of Barbara Sue Berry as beneficiary of the Metropolitan policy entitled her to the proceeds of $49,500.00 of that policy payable on the death of Doss Berry, Jr. Out of the insurance funds received by Barbara Sue Berry and of money received from her father, she paid the deceased's debts amounting to $7,808.18. She was not required to expend any personal funds to pay these debts.
The present action seeking a declaratory judgment to establish the existence of a trust and the rights of the beneficiaries thereunder was filed by Patrice V. Berry, the daughter of Doss Berry, Jr., and by Peggy Jo Hilsmeyer Berry as tutrix of the minor son, Doss Berry, III, against Barbara Sue Berry, the sister of Doss Berry, Jr. The grandfather, Doss Berry, Sr. was also named as a party defendant. Subsequently, when Doss Berry, III came of age, he refused to join as a party plaintiff and was named as a defendant. At the trial, all of the evidence produced by the plaintiff was offered against the grandfather in confirmation of default since he failed to answer and a preliminary default had previously been entered against him; Doss Berry, III waived his appearance and adopted the evidence presented by the defendant, Barbara Sue Berry, as his case.[1]
The essence of the present action is that the plaintiff, the daughter of Doss Berry, Jr., has sued her aunt, the defendant, for a declaratory judgment asking for recognition of an agreement between her father and her aunt, and declaring the plaintiff's rights thereunder. Admittedly, the agreement, if any, was an oral agreement. The basis for the alleged agreement is found in the testimony given by Barbara Sue Berry at the present trial and at the trial of Berry v. Equitable Life Assurance Society of U. S., supra:
"By Mr. McNeil (the attorney for Barbara Sue Berry during the Berry-Equitable trial):
Q. Miss Berry, prior to your brother's decease, did he let you know that he was making you beneficiary of these two plans?
A. He asked me if I would accept the responsibility.
Q. Did he discuss what responsibility he had in mind?
A. Yes.
Q. What was that?
A. He said that he wantedwanted me to see that the children got an education. To take care of our father. To pay his just debts.
Q. And as these checks represent, you paid his debts; is that correct?
A. Yes, sir.
Q. Are you currently taking care of your father?
A. Yes.
Q. And is it your intention to make an effort to take care of his children's education to the best of your ability?
A. Yes." (Emphasis added.)
At the present trial, regarding the agreement, Barbara Sue Berry testified:
"Q. In this letter you state that quote `as I told you then,' referring to March 29th of last year which had been in '73, `my intentions are to see that Patrice and Buddy get an education and to take care of daddy. I have three responsibilities not just one.' Now, was that referring to the insurance money that you had?
*1350 A. I felt that I had a moral responsibility to carry out my brother's wishes. My brother's wishes were that I help the children and act as a backstop for them, in case they needed something that they should feel free to come to me to get what they needed. The night that, well, I guess it was about a week after my brother died, I told Patrice and Buddy that very thing, that I would
. . .
Q. That you would help them be educated?
A. That I would help them and act as a backstop, that his social security would be more than he would be able to provide for them if he was alive, that certainly the Hilsmeyers and Peggy had responsibility, and that if there was anything they wanted or needed and I felt that it was proper in my opinion and as a backstop, I would provide it for them; and I told Patrice and Buddy this, that is, if it was proper in my judgment.
. . . . .
Q. . . . I was referring to the conversation that you had with your brother at the time he made you beneficiary. At the time your brother named you the beneficiary, did he state that he . . . that you were to be made the beneficiary and that you were to take care of his . . . the education of his children, to pay his debts, and to take care of his father?
A. He did not state that I was to take care of the education of the children. He told me that I was to act as a backstop. His social security and his mother and his grandparents could pay and whatever the children needed in my judgment, above and beyond that, that I was to provide for them, to let me know if they needed anything and they could come to me."
The trial judge, after finding that the agreement between Doss Berry, Jr. and Barbara Sue Berry was that "in return for being designated as beneficiary, Miss (Barbara Sue) Berry agreed to pay her brother's just debts, take care of their father and see to the education of Doss Berry's two children, Patrice and Doss, III," interpreted the provision relating to the children's education as follows:
"Logic and common sense make it clear that Doss Berry, Jr.'s intention could not have been for his sister to pay for the entire cost of Patrice's and perhaps Doss, III's college education. If that was his intent, then Barbara Sue Berry would not have had enough money to pay debts, to care for her father and to pay for two college educations. This Court finds that the true intent was for Barbara Sue Berry to aid in the education of the childrendo not let them fail to get an education solely because of lack of funds."
I agree with the trial judge that there was an agreement between Doss Berry, Jr. and Barbara Sue Berry that if Doss Berry, Jr. changed the beneficiary of the two insurance policies to Barbara Sue Berry, she promised him to financially see to the education of the Berry children. It appears from the evidence that this education provision particularly concerned the plaintiff, Patrice V. Berry, since Doss Berry, Jr. and Barbara Sue Berry rightly anticipated that Doss, III would not seek a college education.
My independent research convinces me that the agreement between Doss Berry, Jr. and Barbara Sue Berry is a stipulation pour autrui. The stipulation pour autrui is provided by LSA-C.C. arts. 1890 and 1902, which state:
"Art. 1890:
A person may also, in his own name, make some advantage for a third person the condition or consideration of a commutative contract, or onerous donation; and if such person consents to avail himself of the advantage stipulated in his favor, the contract can not be revoked."
*1351 "Art. 1902:
But a contract, in which anything is stipulated for the benefit of a third person, who has signified his assent to accept it, can not be revoked as to the advantage stipulated in his favor without his consent."
It is rudimentary that stipulations in favor of third-party beneficiaries are favored in our law, being expressly authorized by the codal articles quoted above. See Andrepont v. Acadia Drilling Co., 255 La. 347, 231 So.2d 347 (1969); Albert v. Cuna Mutual Insurance Society, 255 So.2d 170 (La.App. 3 Cir. 1971).
In Carl Heck Engineers, Inc. v. Haselden & Associates, Inc., 316 So.2d 890 (La.App. 1 Cir. 1975), writ denied, 320 So.2d 912 (La. 1975), this Court observed:
"Our understanding of Articles 1890 and 1902, above, is that the nature or classification of the obligation stipulated in favor of a third party does not vitiate the stipulation. Rather, the articles require that validity demands only that the obligation stipulated in favor of the third person be either a condition upon which the agreement between the parties depends, or a consideration of the agreement between the contracting parties. . . .
"As noted above, Article 1890 provides that an advantage in favor of a third person may be made either the condition or consideration of a commutative contract or onerous donation. The fact that such a stipulation is conditional or penal, or whether it is the primary or secondary purpose of the agreement, is a matter of no moment. If the parties agree to such a stipulation, a binding obligation results."
The assent of the third-party beneficiary is of consequence only where revocation of the agreement by the promisor and promisee is attempted. No such revocation can be involved here, the promisee being deceased and the promisor having accepted the benefits of the agreement accruing to her. No particular kind of assent is required. Thus, the assent may be found in any action by the third-party beneficiary which manifests his recognition of the advantage or interest provided for him, such as by instituting suit. This is made abundantly clear by the language of our Supreme Court in First State Bank v. Burton, 225 La. 537, 73 So.2d 453 (1954):
"The law does not provide for an express acceptance of or consent to a stipulation pour autrui by the beneficiary nor does it prescribe any particular form of acceptance or consent. In some cases it was held that the appearance of the beneficiary as claimant in a suit before the Court is evidence of acceptance and certainly it would seem, under that jurisprudence that the claim now being asserted . . . in this proceeding, regardless of any other proof of their assent, is sufficient. See Muntz v. Algiers & Gretna Ry. Co., 114 La. 437, 38 So. 410; Vinet v. Bres, 48 La.Ann. 1254, 20 So. 693." See also Smith, Third Party Beneficiaries in Louisiana: The Stipulation Pour Autrui, 11 Tul.L.Rev. 18, 55 (1936).
Article 1890 of the Civil Code, quoted above, specifically authorizes the advantage for the third-party beneficiary to be made by an onerous donation.
The onerous donation is defined as "that which is burdened with charges imposed on the donee." LSA-C.C. art. 1523.
In Voinche v. Town of Marksville, 124 La. 712, 50 So. 662 (1909), the Court stated:
"It is a principle of civil-law jurisprudence that the donee is bound to execute the charges or obligations imposed on him by the act of donation in the same manner and to the same extent as the debtor in any ordinary contract."
A donor has the right to impose on the donee any charges or conditions he pleases, provided they contain "nothing contrary to law or good morals." LSA-C.C. art. 1527; Board of Trustees v. Richardson, 216 La. 633, 44 So.2d 321 (1949). In order to make the donation an onerous one, the charge or obligation need not be in favor of the donor, but may be in favor of a third person. LSA-C.C. arts. 1774, 1890; Thompson v. Societe Catholique D'Education Religieuse et Litteraire, 157 La. 875, 103 So. 247 (1925).
*1352 Applying these principles to the instant case I conclude that the plaintiff is a third-party beneficiary under a stipulation pour autrui of an onerous donation. LSA-C.C. art. 1890.
I find that the parties herein did agree to a stipulation for the benefit of the plaintiff and that, consequently, a binding obligation did result. See Carl Heck Engineers, Inc. v. Haselden & Associates, Inc., supra. The advantage in favor of the plaintiff was made as a charge placed upon the donation of the insurance proceeds to the defendant, and is thus an onerous donation. LSA-C.C. art. 1523. The onerous donation is governed by the rules applicable to contracts, not the peculiar rules applicable to donations inter vivos. LSA-C.C. art. 1526; Oppenheim, the Donations Inter Vivos, 43 Tul. L.Rev. 731, 754 (1969).
The defendant's brief suggests two principal defenses to the application of the stipulation pour autrui here. It is asserted that (1) the provision for the benefit of third persons must be in writing, and (2) the object forming the matter of the agreement was not certain.
The defendant objects that the agreement can not constitute a stipulation pour autrui because it was not in writing. To support the contention that a stipulation pour autrui must be in writing, major reliance has been placed on Fontenot v. Marquette Casualty Co., 259 La. 671, 247 So.2d 572 (1971). However, any language in that case pertaining to a stipulation pour autrui is clearly obiter dictum. The issue was whether a third person, damaged by a party who was insured, may exercise his rights in a direct action against the reinsurer of the tortfeasor's insolvent liability insurer. This is made clear on page 575 of the opinion, where it is specifically pointed out that reinsurance is "not to be for a third party's benefit." Reinsurance is not a stipulation pour autrui; therefore, it was not necessary for the Court to gratuitously comment on the requirements for same. Landesman v. Ford Motor Company, 331 So.2d 106 (La. App. 1 Cir. 1976), follows the Fontenot case for the proposition that the stipulation pour autrui must be in writing. However, in that case the plaintiff purchased a dealership from a particular automobile agency knowing full well that Ford Motor Company would not give him a franchise. Merely purchasing the assets of the dealership, and operating it, did not create a stipulation pour autrui in the purchaser's favor such that Ford was obligated to grant him a franchise. A stipulation pour autrui was not involved and, again, the remarks by this Court pertaining to the necessity of a "writing" were gratuitous. In Hertz Equipment Rental Corp. v. Homer Knost Construction Company, Inc., 273 So.2d 685 (La.App. 1 Cir. 1973), Fontenot is again cited with approval; again, a stipulation pour autrui was not involved. The insurer only agreed to indemnify the insured for any claim that it was required to pay for damages to equipment. The Court found the insurance clause to be an indemnification provision, not a stipulation pour autrui.
I find the language in Spaht-Johnson, Work of the Appellate Courts for the 1975-1976 Term-Obligations, 305, 346-347 (1977), of interest:
"Must the Stipulation be in writing?
"In several cases, it is stated that the stipulation in favor of a third party must be in writing though there does not appear to be any support for this proposition. The first such statement appears to be in Fontenot v. Marquette Casualty Co., in which the court cites as authority articles 1890 and 1902 of the Civil Code. Neither article mentions a writing requirement. The statement in Fontenot may be a dicta, since the agreement there under consideration was in writing; no issue was present on the effect of a non-written stipulation. The Fontenot statement was cited with approval in Hertz Equipment Rental Corp. v. Homer Knost Construction Co., in which it may have played some part in the court's conclusion that no third party benefit was present.
"There is no more reason to require that an advantage for a third person stipulated in a contract be in writing than there is to have a general requirement that *1353 contracts be in writing. We have no such general requirement, despite the requirement of writing for specific types of contracts.56 While most stipulations for the benefit of third parties which are enforced in the jurisprudence are in writing, it does not appear to be wise to have a rule, absent codal or statutory authority, that such stipulations must be in writing.
56 See, e. g., La.Civ.Code art. 1536 and La. R.S. 9:2721 (1950) (requirement that to affect third persons, instruments concerning immovables must be recorded, which assumes that they must be in writing of some form)."
In Snelling & Snelling v. Delta Data Service, Inc., 259 So.2d 446 (La.App. 4 Cir. 1972), writ denied, 261 La. 1053, 262 So.2d 39 (1972), the promise to pay the employment agency, which was found to be a stipulation pour autrui, was definitely not in writing. While it is true that the written requirement was not an issue (the issue was whether or not the promise was made "directly" to the third party), the Court did hold that there was a stipulation pour autrui and did discuss some of the requisites of such a stipulation. There was a letter evidencing "a bilateral contract," but there is not the slightest intimation that the bilateral contract could not have been "evidenced" in some other manner. The bilateral contract is discussed in LSA-C.C. arts. 1765 and 1766; consent of the parties is required, but there is no requirement that it be in writing. In fact, LSA-C.C. art. 1762 specifically warns that the "contract must not be confounded with the instrument in writing by which it is witnessed." This is further emphasized by LSA-C.C. art. 1779 which lists the four requisites for the validity of a contract: 1. Legally capable parties; 2. consent of the parties; 3. a certain object; and 4. a lawful purpose. No requirement of writing is made in this article.
As the Snelling case holds, "article 1890 does not require the promise be made directly to the third party in writing" in order for it to be a stipulation pour autrui enforceable by the third party beneficiary. In State ex rel. Guste v. Simoni, Heck & Associates, 331 So.2d 478 (La.1976), there was no promise in writing directly to the State, which was to be the ultimate owner of the building; yet, the Court found that there was a stipulation in the contract intended for the advantage of the State, so the State could maintain the action against the contractor who performed engineering services under his contract with the architect.
I feel very strongly that there was a definite agreement between Doss, Jr. and Barbara. It was no mere expression of desire on the part of these parties. There was a certain agreement, as we have already found in Berry v. Equitable Life Assurance Society of U. S., 316 So.2d 399 (La.App. 1 Cir. 1975). In that case, Barbara positively testified that it was their intent that she should discharge his debts, care for their father and see to the education of the Berry children, and she would be named beneficiary of his insurance policy. I am unimpressed by her new version (after retaining new counsel) that she had this great latitude in carrying out Doss, Jr.'s "wishes." These were not merely precatory expressions where she would get the full benefit of the insurance proceeds as absolute owner thereof in their entirety; and, if convenient, she would try to carry out the desires of her deceased brother. I can not accept any conclusion that Doss, Jr. merely "wanted" the insurance proceeds to pay his debts, care for his father and educate his children, and that he merely requested his sister to carry out his wishes if she found it convenient to do so. The fact that he considered a trust, but decided against it because of its presumed (by him) "inflexibility", does not detract from the idea that he wanted a binding agreement; rather, it enforces the idea that he wanted his sister to be bound, but to have some flexibility because he thought his son probably would not want a college education and he could not be sure how much longer his elderly father would live. The idea of a stipulation pour autrui by an onerous donation admirably fulfilled his need of a more flexible arrangement (than the trust) and, yet, one binding upon his sister. This agreement created no mere natural obligation, but a validly enforceable contract.
*1354 The plaintiff in the instant case is in the position of a third-party beneficiary in whose favor a stipulation pour autrui was made with the specific intent of benefiting her.
In summary, the cases cited by the defendant requiring that the agreement be in writing find their authority in Article 2278 of the Civil Code, which interdicts parol evidence to prove any promise to pay the debt of a third person, not in Article 1890, which makes no requirement that the stipulation pour autrui be in writing. The agreement or stipulation in the instant case is not a promise to pay the debt of a third person.
Finally, our Supreme Court, in Ardoin v. Hartford Accident & Indemnity Company, 360 So.2d 1331 (La.1978), emphasized that in deciding issues we must refer "first to the code and other legislative sources" rather than treating judicial opinions as the primary source of law. In the instant case, considering the primacy of the code, and particularly Civil Code art. 1890, I find no justification whatsoever for the position that a stipulation pour autrui must be in writing.
The defendant further objects that the agreement or stipulation pour autrui did not meet the requisites necessary to the validity of a contract in that there was no "certain object, which forms the matter of agreement" as required by LSA-C.C. art. 1779(3), and the obligation did not have for "its object something determinate, at least as to its species," as required by LSA-C.C. art. 1886. The cases cited by the defendant in support of this contention are factually distinguishable. In the instant case, the stipulation was for certain objects, one of which was Patrice's education.
The next question to be answered is what portion of the insurance proceeds did the parties intend for the plaintiff's education. From the evidence in the instant suit, as well as that presented in the two previous actions, I can only conclude that this is an onerous donation which is jointly in favor of the obligees; LSA-C.C. art. 2081. The parties clearly intended that there was to be a portion for taking care of their elderly father, a portion for the children's education, and a portion for the donee for carrying out the obligations imposed. See Commercial Union Insurance Company v. Maise, 340 So.2d 684 (La.App. 4 Cir. 1976), writ refused, 342 So.2d 1112 (La.1977).
My review of the record convinces me that the trial court was correct in fixing the amount to be awarded the plaintiff in the sum of $2,800.00, with interest as set out in the judgment. This amount is well within the portion intended by the parties for the plaintiff's education.
I also feel that the trial court was correct in reserving to Patrice V. Berry, the plaintiff, the right to bring further proceedings in this matter for any additional sums to which she may be entitled.
In addition to the issues discussed above, the defendant has re-urged on appeal her exception of no cause of action, which the trial court properly overruled. Hero Lands Company v. Texaco, Inc., 310 So.2d 93 (La. 1975). The petition states a cause of action.
The defendant also assigned as error the failure of the District Court to sustain her Motion for Summary Judgment. It is obvious from the affidavits filed with this Motion that there were genuine issues as to material facts and that, as a matter of law, the defendant was not entitled to judgment in her favor. LSA-C.C.P. art. 966; Hughes v. Eagle Trucking Co., 340 So.2d 1067 (La. App. 1 Cir. 1976).
Regarding the position of the majority concerning the alleged uncertainty of the "object" of the agreement, the "object" of many contracts is, at the time of the making of the agreement, uncertain. Under C.C. art. 1886, "the quantity of a thing may be uncertain, provided it be capable of being ascertained." Our courts are competent to determine the intent in the event of any lack of specificity.
The majority opinion states that no trust was created. While I agree, since I maintain that the agreement is a stipulation pour autrui by an onerous donation, it is not *1355 necessary for me to address the issue of a trust.
Accordingly, I respectfully dissent.
NOTES
[*] Serving by appointment of the La.Sup.Ct.
[1] Berry v. Equitable Life Assurance Society of U.S., 316 So.2d 399 (1st Cir. 1975).
[2] LSA-R.S. 9:1752:

"An inter vivos may be created only by authentic act or by act under private signature executed in the presence of two witnesses and duly acknowledged by the settlor or by the affidavit of one of the attesting witnesses."
[3] LSA-R.S. 9:1751:

"A testamentary trust may be created only in one of the forms prescribed by the laws regulating donations mortis causa."
[4] See Succession of Jones, 172 So.2d 312 (4th Cir. 1965) writ refused 247 La. 718, 174 So.2d 131 (1965).
[5] This statement has been criticized, 37 La.L.R. 346-7.
[1] The judgment makes no mention of Doss Berry, Sr. or of Doss Berry, III. Their claims, if any, were not adjudicated, and no judgment was rendered against them. They have not appealed, and are not represented in this appeal.