JAMES F. McKAY III, Chief Judge.
1 defendants, the Housing Authority of New Orleans (“HANO”), Guste Homes Resident Management Corporation (“Guste”), B.W. Cooper Resident Management Corporation (“Cooper”), Scottsdale Insurance Company (“Scottsdale”), Jefferson Insurance Company of New York (“Jefferson”), Canal Indemnity Company (“Canal”), Penn-American Insurance Company (“PennAmeriean”), and Odyssey Re (London) Limited, f/k/a Sphere Drake Insurance P.L.C. (“Odyssey”), appeal the trial court’s June 30, 2014 judgment, granting plaintiffs’ motion for class certification. In a separate writ application, consolidated herein with this appeal, defendants also seek supervisory review of the trial court’s July 30, 2014 judgment, denying their exception of prescription. For the reasons set forth below, we affirm the granting of plaintiffs’ motion for class certification. Further, we grant the writ, vacate the judgment denying defendants’ exception of prescription and remand the matter to the trial court with instructions.
FACTS AND PROCEDURAL HISTORY
On December 17, 2001, plaintiffs, Janice Claborne and Sheryl Jones, filed a “Class Action Petition for Certification and Damages” on behalf of themselves and pothers similarly situated, for damages related to their alleged exposure to mold while living in housing developments operated by HANO. Shortly thereafter, the plaintiffs timely filed a motion to certify their claims as a class action. On January 6, 2003, plaintiffs filed a master supplemental complaint, adding fourteen named plaintiff representatives. On March 11, 2003, a first supplemental and amending master complaint was filed, wherein plaintiffs proposed the following class definition:
All residents of THE HOUSING AUTHORITY OF NEW ORLEANS who occupied apartments on December 1, 1980 through the present date and whose apartments were managed by THE HOUSING AUTHORITY OF NEW ORLEANS, B.W. COOPER RESIDENT CORPORATION, GUSTE HOMES RESIDENT MANAGEMENT CORPORATION and the HANO TEN *275 ANT RESIDENT COUNCIL, and whose apartments contain indoor fungal substances such as mold and mold spores which were growing on building materials and the by-products of the mold and the mold spores that were released into the air of said apartments.
Defendants raised a peremptory exception of prescription, arguing that plaintiffs’ tort claims were prescribed on the face of the petition. Plaintiffs opposed the exception, arguing that the doctrines of contra non valentem, and continuing tort applied to their claims to defeat prescription. Plaintiffs have also asserted breach of contract claims based on their leases with HANO, thus arguing that a ten year liber-ative prescription period applied. Defendants objected to the late assertion of breach of contract claims.
In March 2007, the Hon. Michael G. Bagneris presided over class certification hearings, but did not render judgment. After several hearing dates on the exception of prescription, spanning several years, judgment was rendered on January 17, 2012, granting defendants’ exception of prescription.
| ^Plaintiffs appealed the granting of the exception of prescription to this Court. While expressing no opinion as to the correctness of the ruling on the merits, we concluded that the trial court improvidently ruled on the exception of prescription without first ruling on the motion for class certification. As a result, we vacated the judgment and remanded the matter for further proceedings. Claborne v. HANO, 2012-0808, (La.App. 4 Cir. 5/29/13), 116 So.3d 983, writ denied, 2013-1520 (La.10/4/13), 122 So.3d 1022.
On remand to the trial court, due to Judge Bagneris’ retirement from the bench, the Hon. Val P. Exnicios, Judge Pro Tempore, was appointed to preside over the case. On April 22, 2014, the court heard oral arguments on the issue of class certification; no new evidence was presented. After taking the matter under advisement, and considering the evidence contained in the prior appellate record, Judge Pro Tempore Exnicios rendered judgment on June 30, 2014, granting plaintiffs’ motion to certify the class.
The trial court’s judgment granting certification does not contain the class definition. However, lengthy written reasons for judgment were issued, indicating that the trial court considered plaintiffs’ proposed class definition to be overbroad. A more restrictive definition was provided by the court in its reasons for judgment, as follows:
. First, this court restricts the definition by refining its earliest temporal boundary as the year HUD regulation 24 CFR Part 5, § 5.703(f) contractually bound HANO to keep the housing development units and common areas free of mold: 1998. Second, the parties’ testing of the representative units after the lawsuit was filed extends the evidentiary basis through at least 2004. Third, the court believes that pursuant to Watters v. Dept. of Social Serv., the class definition must include something that causally links the breach of the defendants’ duty to the alleged personal injuries, property damage, and nuisance claims.
| /Thus, the new class definition is “all leaseholders and other permanent residents of THE HOUSING AUTHORITY OF NEW ORLEANS, from 1998 who were adversely affected by the presence of toxic mold in their apartments as a result of HANO, Guste or B.W. Cooper Resident Management Corporations’ (“RMC”) breach of their contractual duty with HUD pursuant to 24 CFR Part 5, § 5.703(f) to maintain said apartments and common areas ‘free of mold’ for the benefit of HANO, Guste RMC or *276 Cooper RMC’s leaseholders and their permanent residents;
On July 30, 2014, one month after ruling on class certification, Judge Pro Tempore Exnicios overruled defendants’ exception of prescription. The record reflects that this ruling was made without a hearing or notice to the parties. Defendants now appeal the judgment granting class certification and seek supervisory review from the judgment overruling the exception of prescription.
ASSIGNMENTS OF ERROR
Defendants (HANO, Guste, Cooper, Scottsdale, Jefferson, Canal, and PennAm-erican) raise the following assignments of error:
1) The trial court erred in granting certification where plaintiffs failed to meet the requirements for class certification pursuant to La. C.C.P. art. 591;
2) The trial court erred in not only certifying a class but also attempting to cure that error by ordering a two phase trial;
3) The trial court erred as a matter of law in holding that 24 CFR § 5.703(f) provides plaintiffs a private contract cause of action;
4) The trial court erred as a matter of law in certifying a class based on a novel and untested theory of law that would require a new interpretation of 24 CFR § 5.703(f), never before litigated in any Louisiana state or federal court; and
5) The trial court’s judgment, which is devoid of any class definition or limits on class certification, is vague and ambiguous and violates Louisiana law.[1]
| .LAW AND ANALYSIS

Class Certiñcation

“A class action is a nontraditional litigation procedure which permits a representative with typical claims to sue or defend on behalf of, and stand in judgment for, a class of similarly situated persons when the question is one of common interest to persons so numerous as to make it impracticable to bring them all before the court.” Brooks v. Union Pacific R.R. Co., 2008-2035, pp. 9-10 (La.05/22/09), 13 So.3d 546, 554 (citing Ford v. Murphy Oil U.S.A., Inc., 96-2913, p. 4 (La.9/9/97), 703 So.2d 542, 544). “The purpose and intent of class action procedure is to adjudicate and obtain res judicata effect on all common issues applicable not only to persons who bring the action, but to all others who are ‘similarly situated.’ ” Id.
The appellate standard of review in class certification cases was reiterated in Doe v. Southern Gyms, LLC, 2012-1566, p. 9 (La.3/19/13), 112 So.3d 822, 830, as follows:
In reviewing a class certification, the trial court’s factual findings are subject to the manifest error standard; however, the ultimate decision of whether or not to certify the class is reviewed under an abuse of discretion standard. “Implicit in this deferential standard is recognition of the essentially factual basis of the certification inquiry and of the district court’s inherent power to manage and control pending litigation.” Whether the district court applied the correct legal standard in determining whether to certify the class is reviewed de novo (internal citations omitted).
The trial court has vast discretion in deciding whether or not to certify a *277 class. Chiarella v. Sprint Spectrum LP, 2004-1433, p. 16 (La.App. 4 Cir. 11/17/05), 921 So.2d 106, 118. “When reviewing the trial court’s ruling regarding class certification, we do not consider whether plaintiffs’ claims state a cause of action or have substantive merit, or whether plaintiffs will ultimately prevail on the |fimerits.” Oubre v. Louisiana Citizens Fair Plan, 2007-0066, p. 7 (La.App. 5 Cir. 5/29/07), 961 So.2d 504, 509. (citation omitted). “Rather, our task is to examine plaintiffs’ legal claims and to determine only whether a class action is the appropriate procedural device in light of established Louisiana criteria.” Id. (citation omitted).
Under Louisiana law, the requirements for class certification are set forth in La. C.C.P. art. 591. Article 591(A) provides five threshold prerequisites that must be met:
A. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
(1) The class is so numerous that join-der of all members is impracticable.
(2) There are questions of law or fact common to the class.
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
(4) The representative parties will fairly and adequately protect the interests of the class.
(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case. This prerequisite shall not be satisfied if it is necessary for the court to inquire into the merits of each potential class member’s cause of action to determine whether an individual falls within the defined class.
In addition to these five prerequisites, La. C.C.P. art. 591(B) lists the following requirements that must be met:
B. An action may be maintained as a class action only if all of the prerequisites of Paragraph A of this Article are satisfied, and in addition:
(1) The prosecution of separate actions by or against individual members of the class would create a risk of:
(a) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(b) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
I ?(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:
(a) The interest of the members of the class in individually controlling the prosecution or defense in separate actions;
(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
*278 (c) The desirability or undesirability of concentrating the litigation in a particular forum;
(d) The difficulties likely to be encountered in the management of a class action;
(e) The practical ability of individual class members to pursue their claims without class certification;
(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or' legal rights as may be implicated, justifies the costs and burdens of class litigation; or
(4) The parties to a settlement request certification under Subparagraph B(3) for purposes of settlement, even though the requirements of Subpara-graph B(3) might not otherwise be met.
“Whether a class action meets the requirements imposed by law involves a ‘rigorous analysis.’ ” Dupree v. Lafayette Ins. Co., 2009-2602, p. 6 (La.11/30/10), 51 So.3d 673, 679 (quoting Brooks, supra, p. 10, 13 So.3d at 554). When conducting this analysis, the trial court “must evaluate, quantify and weigh [the relevant factors] to determine to what extent the class action would in each instance promote or detract from the goals of effectuating substantive law, judicial efficiency, and individual fairness.” Brooks, supra, p. 10, 13 So.3d at 554 (quoting McCastle v. Rollins Envtl. Servs. of Louisiana, Inc., 456 So.2d 612, 618 (La.1984)).
The party seeking class certification is responsible for demonstrating that the requirements of La. C.C.P. art. 591 have been met. Price v. Martin, 2011-853, p. 7 (La.12/6/11), 79 So.3d 960, 967. Generally, the court should err on the side of granting class certification, because the class is always subject to modification or decertification. Id. However, “that general rule cannot and should not be used as a substitute for the rigorous analysis required to determine whether the prerequisites of Louisiana’s class action provisions have in fact been satisfied.” Id.
In the present case, the trial judge found that plaintiffs’ claims met all of the criteria set forth in Article 591(A), namely numerosity, commonality, typicality, adequacy of representation, and an objectively definable class. The trial judge also determined that the elements of predominance and superiority set forth in La. C.C.P. art. 591(B)(3) had been satisfied. Applying the legal precepts outlined above, we now turn to the facts presented here to determine whether, as raised in defendants’ first assignment of error, the trial court erred in certifying the class pursuant to the requirements of La. C.C.P. art. 591.

Assignment of Error No. 1 The trial court erred in granting certifícation where plaintiffs failed to meet the requirements for class certification pursuant to La. C.C.P. art. 591.

Numerosity

The first requirement for certifying a class pursuant to La. C.C.P. art. 591(A)(1) is numerosity. “Although referred to as the ‘numerosity’ requirement, it is important to note that this prerequisite is not based on the number of class members alone. The requirement of numerosity is followed by, and must be considered with, the core condition of this requirement— that joinder be impracticable. See 1 William B. Rubenstein, Alba Conte, Herbert B. Newberg, Newberg on Class Actions, § 3:11, p. 186 (5th ed.2011).” Doe v. Southern Gyms, LLC, supra, p. 10, 112 So.3d at 830.
 | a“The determination of numerosity is based in part upon the number of putative class members, but is also based upon considerations of judicial economy in *279 avoiding a multiplicity of lawsuits, financial resources of class members, and the size of the individual claims.” Chalona v. Louisiana Citizens Property Ins. Corp., 2008-0257, p. 6 (La.App. 4 Cir. 6/11/08), 3 So.3d 494, 501 (citing Davis v. Jazz Casino Co., LLC, 2003-0005, p. 7 (La.App. 4 Cir. 1/14/04), 864 So.2d 880, 888). Moreover, “[w]hile there must be proof of a definable group of aggrieved persons, a plaintiff is not required to identify every member of the potential class prior to certification.” Doe v. Southern Gyms, LLC, supra, p. 12, 112 So.3d at 831. (citations omitted).
Here, the trial court determined that the requirement of numerosity was met because the potential class of plaintiffs involves nearly three thousand leaseholders and residents who have been exposed to mold. Because the record supports such a finding and further demonstrates that joinder of these individual claims would be impracticable, we find no manifest error in the trial court’s finding that the numerosity requirement was met.

Commonality

A showing of commonality of questions of law and fact among the class is the second prerequisite in certifying the class. La. C.C.P. art. 591(A)(2). “The test for commonality requires only that there be at least one issue the resolution of which will affect all or a significant number of putative class members.” Oliver v. Orleans Parish School Bd., 2009-0489, pp. 10-11 (La.App. 4 Cir. 11/12/09) 25 So.3d 189, 198 (citing Watters v. Dept. of Social Serv., 2005-0324, p. 15 (La.App. 4 Cir. 4/19/06), 929 So.2d 267, 278). Regarding the commonality requirement, the Louisiana Supreme Court explained:
| mThis language is “easy to misread, since ‘[a]ny competently crafted class complaint literally raises common “questions.”’” WalMart Stores, Inc., [— U.S. -] 131 S.Ct. [2541] at 2551 [180 L.Ed.2d 374 (2011) ], quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U.L.Rev. 97, 131-32 (2009). The mere existence of common questions, however, will not satisfy the commonality requirement. Commonality requires a party seeking certification to demonstrate [that] the class members’ claims depend on a common contention, and that common contention must be one capable of class-wide resolution—one where the “determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.” Wal-Mart Stores, Inc., 131 S.Ct. at 2551.
Price, supra, p. 10, 79 So.3d at 969.
Here, plaintiffs submit that the claims of each class member arise out of their exposure to mold in the housing developments and defendants’ failure to remediate the mold, all in violation of defendants’ obligations as lessors. More specifically, plaintiffs contend that violations of lease obligations establish a legal cause of action, citing La. C.C. art. 2691, which sets forth a lessor’s obligation for repairs, and La. C.C. art. 2696 et seq., regarding a lessor’s warranty against vices and defects.
Plaintiffs further assert that the lease agreements between HANO and its tenants establish HANO’s contractual duty to maintain the dwelling units in good repair, and to comply with the requirements of applicable building codes and other federal regulations affecting health and safety. Plaintiffs cite 24 CFR § 5.703, which states that “HUD housing must be decent, safe, sanitary, and in good repair” and more specifically 24 CFR § 5.703(f), which provides:
Health and safety concerns. All areas and components of the housing must be free of health and safety hazards. *280 These areas include, but are not limited to, air quality, electrical hazards, elevators, emergency/fire exits, flammable materials, garbage and debris, handrail hazards, infestation, and lead-based paint. For example, the buildings must have fire exits that are not blocked and have hand rails that are undamaged and have no other observable deficiencies. The housing must have no evidence of infestation by rats, mice, or other Invermin, or of garbage and debris. The housing must have no evidence of electrical hazards, natural hazards, or fire hazards. The dwelling units and common areas must have proper ventilation and be free of mold, odor (e.g., propane, natural gas, methane gas), or other observable deficiencies. The housing must comply with all requirements related to the evaluation and reduction of lead-based paint hazards and have available proper certifications of such (see 24 CFR part 35).
Plaintiffs assert that the evidence presented to the trial court, including plaintiffs’ testimony and HANO’s own maintenance records, demonstrates that defendants were fully aware of the mold infestation, but failed to properly remediate the problem as required by the lease agreements with HUD. Thus, plaintiffs submit that, because they were all injured by the same conduct, the commonality requirement is met.
Defendants set forth two reasons why commonality cannot be established: 1) plaintiffs identify no issue relevant to their injuries that, once resolved on a common basis, could drive this litigation forward; and 2) the common issues that plaintiffs do identify are actually individual issues that can only be resolved on a plaintiff-by-plaintiff and unit-by-unit basis.
Defendants further contend that individual proof is necessary to establish plaintiffs’ alleged personal injuries, as the deposition testimony of the class representatives reflect a wide variety of physical, mental and property damages. Defendants assert that the.cause of the mold, as well as the source of any moisture or water intrusion will require extensive individualized inquiries, including an inquiry into the individual habits of each tenant.
As reflected in the reasons for judgment, the trial court, addressing commonality together with the parallel requirement of predominance found in La. 11?C.C.P. art. 591(B), determined that both requirements were met. Specifically, the trial court stated:
Perhaps the most important threshold set of common questions will revolve around the first element of any negligence analysis: Did these defendants owe these plaintiffs a duty? Once that common question is answered other common questions will need to be litigated. Doubtless the court will be asked to engage in statutory interpretation over phrases like what ‘good repair,’ ‘proper ventilation,’ and ‘free of mold’ actually mean. A related common question might be did defendants owe plaintiffs a duty to conduct air monitoring or structural repair of the causes of the water intrusions in light of the frequent complaints about water intrusion and sightings of mold and mildew?
The trial court went on to state:
Whether or not toxic mold exposure can cause most if not all of the symptoms plaintiffs allege they suffered from while living in an apartment operated by HANO defendants is a question of general causation that is susceptible of common, class-wide evidence. Even defendants’ experts acknowledge that persons with mold allergens can contract almost all of the conditions claimed by plaintiffs *281 if they were sufficiently exposed to sufficient quantities of toxic strains of mold.
In sum, the trial court concluded that the claims of the class members have a sufficient common character and are derived from a common source, such that the requirements of commonality and predominance were satisfied. After our thorough review of the record evidence regarding the common issues presented by plaintiffs, we cannot say that the trial court erred in finding that the requirement of commonality was met.

Typicality

The third prerequisite in certifying the class is typicality. La. C.C.P. art. 591(A)(3). “The element of typicality requires that the claims of the class representatives be a cross-section of, or typical of, the claims of all class members.” Davis, supra, p. 9, 864 So.2d at 889. “Typicality, in class action certification is satisfied if the claims of the class representatives arise out of the 11ssame event, practice, or course of conduct that gives rise to the claims of other class members and those claims are based on the same legal theory.” Gudo v. Admin. of Tulane Educ. Fund, 2006-1515, p. 12 (La.App. 4 Cir. 9/5/07), 966 So.2d 1069, 1078 (citing Andrews v. Trans Union Corp., 2004-2158, p. 8 (La.App. 4 Cir. 8/17/05), 917 So.2d 463, 469).
Plaintiffs maintain that the claims of the class representatives are typical in that their claims arise from the same event, practice, or course of conduct that give rise to the claims of other class members and are based on the same legal theory. Defendants counter, arguing that this case raises issues as to whether the alleged allergic reactions were caused by the alleged exposure to mold or to some other substance. Further, defendants assert that each class representative has a separate, unique, and individual level of exposure, thus the typicality requirement is not met.
The trial court determined that the typicality requirement was met, stating:
This court agrees with plaintiffs that, on the basis of the class representatives’ testimony either by deposition and/or at the class cert hearing, they appear to be a model of cross-sectionality of the complaints the class as a whole is alleging: 1) each class representative described what they believe to have been visible mold in their apartments at some point during their tenancy; 2) each class representative recalled notifying the defendants about their individual water intrusion problems and the resultant mold; 3) each class representative averred that the mold never went away with bleaching or repainting; 4) some class representatives described the ways the mold allegedly damaged their movable property; and 5) each of the class representatives described symptoms that they believe were' caused by the mold in their apartments that they visualized. Moreover, “[t]heir numerous complaints about the presence of mold are also documented in HANO’s maintenance records. The Class representatives also supplied photographs of the mold in their apartments.”
Considering the record, we find no error in the trial court’s ruling on this issue. We find, as did the trial court, that the class representatives typically represent a cross-section of the claims asserted on behalf of the class, with all | uplaintiffs relying on identical legal theories based on the actions and inactions of defendants.

Adequacy of Representation

The fourth prerequisite to class certification is that the representative parties must fairly and adequately protect the interests of the class. La. C.C.P. art. *282 591(A)(4). “Adequacy of representation for class certification, requires that the claims of the proposed class representatives be a cross-section of, or typical of, the claims of all class members.” Husband v. Tenet HealthSystems Mem’l Med. Ctr., Inc., 2008-1527, p. 11 (La.App. 4 Cir. 8/12/09), 16 So.3d 1220, 1230 (citing Andry v. Murphy Oil, U.S.A., Inc., 97-0793, p. 6 (La.App. 4 Cir. 4/1/98), 710 So.2d 1126, 1130). “Class representatives can adequately represent absent class members, even though claims by a particular, class representative with regard to the exact damages claimed may not be typical, as long as the class of damages asserted by each representative is.” Id.
In Estopinal v. St. Bernard Parish, 2013-1561, p. 14 (La.App. 4 Cir. 11/5/14), 154 So.3d 591, 601-02 (citing Davis, supra, pp. 8-9, 864 So.2d at 888), this Court enumerated four factors that may be relevant to determining adequacy as follows:
(1) The representative must be able to demonstrate that he or she suffered an actual-vis-á-vis hypothetical-injury;
(2) The representative should possess first-hand knowledge or experience of the conduct at issue in the litigation;
(3) The representative’s stake in the litigation, that is, the substantiality of his or her interest in winning the lawsuit, should be significant enough, relative to that of other class members to ensure that representative’s conscientious participation in the litigation; and
(4) The representative should not have interests seriously antagonistic to or in direct conflict with those of other class members, whether because the representative is subject to unique defenses or 11Badditional claims against him or her, or where the representative is seeking special or additional relief.
In the present case, finding that plaintiffs satisfied the adequacy of representation requirement, the trial court stated:
This court is not convinced by any evidence presented by defendants to challenge the adequacy of representation of any class representative. Unlike in Price and Ford, the plaintiffs are not successive home owners competing with one another for a larger percentage of the damages for ongoing contamination of their property. To the extent that any plaintiff will collect for damages in this case, he or she will be limited to damage for his or her own injuries sustained and his or her own movable property, which all of the class representatives who claimed property damage state was destroyed beyond repair by the mold. Having read the deposition testimony and the hearing transcripts with particular attention, this court is convinced that the named representatives will be most vigorous in their advocacy for the absentee class members. Finally, counsel for the named plaintiffs have decades of litigation experience among them. This court recognizes them as competent, experienced, qualified, and generally able to conduct the proposed litigation most vigorously.
After our review of the record, including the testimony of the class representatives, we conclude that there is evidentiary support for the trial court’s finding that plaintiffs met the requirement for adequacy of representation. The record demonstrates that the class representatives suffered injuries that are typical of the class and that their claims arose out of the same course of conduct (by defendants) as the other class members. Moreover, there is no indication that the class representatives have any conflicting interests with other members of the class.

*283
Class Definition

“The final prerequisite under [La. C.C.P. art.] 591(A) is that the class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for the purposes of the conelusiveness hfiOf any judgment that may be rendered in the case.” Husband, supra, p. 12, 16 So.3d at 1230 (citing Chalona, supra, p. 9, 3 So.3d at 502). “The purpose of the class definition requirement is to ensure that the class is not amorphous, indeterminate, or vague, so that any potential class members can readily determine if he or she is a member of the class.” Id.
Here, as previously stated, the trial court rejected plaintiffs proposed class definition as overbroad, and adopted the following definition:
First, this court restricts the definition by refining its earliest temporal boundary as the year HUD regulation 24 CFR Part 5, § 5.703(f) contractually bound HANO to keep the housing development units and common areas free of mold: 1998. Second, the parties’ testing of the representative units after the lawsuit was filed extends the evidentiary basis through at least 2004. Third, the court believes that pursuant to Watters v. Dept. of Social Serv., the class definition must include something that causally links the breach of the defendants’ duty to the alleged personal injuries, property damage, and nuisance claims.
Thus, the new class definition is “all leaseholders arid other permanent residents of THE HOUSING AUTHORITY OF NEW ORLEANS, from 1998 who were adversely affected by the presence of toxic mold in their apartments as a result of HANO, Guste or B.W. Cooper Resident Management Corporations’ (“RMC”) breach of their contractual duty with HUD pursuant to 24 CFR Part 5, § 5.703(f) to maintain said apartments and common areas ‘free of mold’ for the benefit of HANO, Guste RMC or Cooper RMC’s leaseholders and their permanent residents.”
Defendants argue that the definition is not ascertainable because it is based on a federal regulation (24 CFR § 5.703(f)) that does not provide a private cause of action and has never been defined by regulation or judicial interpretation. Defendants also argue that the requirement of ascertaina-bility has not been met because plaintiffs have not identified any mechanism for identifying absent class members.
l17We find no merit in these arguments. The definition adopted by the trial court establishes that the class is clearly and objectively defined based on defendants’ affirmative duties and obligations as a lessor, and it sufficiently links defendants’ breach of duty under the leases to plaintiffs’ claims for damages resulting from their exposure to mold. Moreover, we find that the class definition provides potential class members with sufficient information to enable them to decide whether they are included within the class. In sum, we find no error in the trial court’s determination that the requirement of definability was met.
Based on the foregoing, we find that plaintiffs fulfilled the statutory requirements of La. C.C.P. art. 591(A). Accordingly, we now turn to the question of whether the requirements of La. C.C.P. art. 591(B) were met. Plaintiffs are required to prove, pursuant to La. C.C.P. art. 591(B)(3), that common questions of law or fact predominate over any individual issues and that the class action procedure is superior to any other. Pursuant to La. C.C.P. art. 591(B)(3), plaintiffs are required to prove “that common questions of law or fact predominate over any individu *284 al issues and that the class action procedure is superior to any other.” Price, supra, pp. 21-22, 79 So.3d at 975.

Predominance and Superiority

Regarding the requirements of predominance and superiority, the Louisiana Supreme Court has explained:
In addition to proving questions of law or fact common to the members of the class exist, the plaintiffs also must establish under Art. 591(B)(3) that these common issues predominate over any individual issues and that the class action procedure is superior to any other. The inquiry into predominance tests “whether the proposed classes are sufficiently cohesive to warrant adjudication by representation.” Brooks, 08-2035, p. 19, 13 So.3d at 560 (quoting Amchem Products, Inc. v. Windsor, 521 U.S. 591, 117 S.Ct. 2231, 2249, 138 L.Ed.2d 689 (1997)). This court has explained that the | ^predominance requirement is more demanding than the commonality requirement, because it “entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class,” a process that ultimately “prevents the class from degenerating into a series of individual trials.” Id. (quoting O’Sullivan v. Countrywide Home Loans, Inc., 319 F.3d 732, 738 (5th Cir.2003)). Since revision in 1997, La.Code Civ. Proc. art. 591(B)(3)(a)-(f) set forth “matters pertinent” to be considered in determining whether the common questions predominate over questions affecting only individual members, and whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy. With these considerations in mind, we must rigorously analyze the plaintiffs’ claims to determine whether the common substantive issues, if any, predominate over individual questions, and whether the class action procedure is superior to any other under these facts.
Dupree, supra, pp. 11-12, 51 So.3d at 683.
In this case, the trial court found that the plaintiffs satisfied article 591(B)(3), which requires the court to find that questions of law or fact common to members of the class predominate over any questions affecting only individual members, and that the class action is superior to other available methods of adjudicating the controversy. We find no manifest error in this ruling.
The claims of all class members originate from one common source; namely, plaintiffs’ damages from mold exposure due to defendants’ acts or omissions. Thus, each class member will have to prove causation based on the same set of operative facts. This pivotal issue is common to all plaintiffs and predominates over any individual issues which may be presented by the individual class members.
We also recognize that the risk in trying some 2900 individual cases could result in non-uniformity and inconsistent adjudications on the common issues. Thus, under the circumstances presented here, we find that the class action | -^procedure is the superior method to ensure individual fairness and to promote judicial efficiency.
Considering the trial court’s well-reasoned conclusions in light of the record before us, we find no manifest error in the trial court’s factual findings and no abuse of discretion in the trial court’s determination that this case meets all of the requirements of La. C.C.P. art. 591(A) and (B) for certification as a class action.

*285
Assignment of Error No. 2 The trial court erred in ordering a two-phase trial.

The trial court ordered that the trial of this class action proceed in two phases, as follows:
In Phase 1, the liability issues (e.g. the meaning of “free of mold” as a contractual obligation, whether HANO & the other management defendants factually breached a duty to provide a mold-free environment for the leaseholders (and their permanent domiciliaries) by failing to repair the structural problems allowing water intrusions for purposes of the negligence cause of action; whether the omission and resulting water intrusions in the apartments led to unchecked mold proliferation, whether the documented presence of mold generally has been proven to cause the personal injuries plaintiffs allegedly suffered, and whether the documented instances of mold rise to the level of a nuisance as would be more than a neighbor should be expected to bear by a reasonable person’s standard) will be presented on a class basis in a ‘first phase’ trial.
If the first phase trial results in a “liability” verdict finding that the defendants breached their duty of care, which led to proof of general causation of mold-induced property damage, personal injuries and/or nuisance, the class action will decertify or splinter into a “second phase” to allow the plaintiffs and all putative plaintiffs to individually present their specific causation and damage claims. During this second phase, defendants will also have the opportunity to present individualized evidence as to each individual’s comparative negligence in contributing to the mold.
| ¡^Defendants argue that individualized inquiries as to liability and damages preclude certification. They further maintain that the two-phase trial will result in nearly 3000 mini-trials. We disagree.
“Louisiana courts are given vast discretion and may order a trial in phases of common issues and individual issues to alleviate the claims that a class action is unworkable.” Davis v. Am. Home Prods. Corp., 2002-0942, 2002-0943, 2002-0944, p. 24 (La.App. 4 Cir. 3/26/03), 844 So.2d 242, 260 (citing Adams v. CSX Railroads, 92-1077 (La.App. 4 Cir. 2/26/93), 615 So.2d 476, 483.). Moreover, it is recognized that “the mere fact that varying degrees of damages may result from the same factual transaction and same legal relationship or that class members must individually prove their right to recover does not preclude class certification.” Brooks, supra, 2008-2035, p. 17, 13 So.3d at 559 (quoting Bartlett v. Browning-Ferris Industries Chemical Services, Inc., 99-0494 (La.11/12/99), 759 So.2d 755, 756).
Here, after finding predominance of common questions, the trial court proposed that the trial be divided into a liability phase and, if defendants’ liability is established; a second phase where plaintiffs would present their specific causation and damages claims. We find no error in this bifurcated trial plan.

Assignment of Error No. 3 The trial court erred in holding that 24 CFR § 5.703(f) provides plaintiffs a private contract cause of action.

Defendants assert that 24 CFR § 5.703(f) does not provide a private cause of action, thus plaintiffs have no standing to assert a cause of action under this federal regulation. We find no merit in this assignment of error.
| ^This Court was faced with a similar legal analysis in In re New Orleans Train Car Leakage Fire Litigation, 2000-0479 (La.App. 4 Cir. 06/27/01), 795 So.2d 364, a class action brought against various par *286 ties for damages after butadiene leaking from a railroad tank car caused a two-day fire. In that action, Polysar, the owner of the butadiene, was found to be 5% at fault. The key dispute with respect to Polysar’s duty revolved around several federal regulations pertinent to the safety and transportation of butadiene. This Court recognized that the federal regulations promulgated by the Department of Transportation, did not create any private right of action for damages, and that any claim for damages arose under Louisiana tort law. However, as we stated: “public safety regulations such as these, issued by an agency presumed to have expertise in the relevant subject matter and statutorily-charged with protecting public safety, are very useful in determining the standard of care applicable in a negligence action (i.e. defining the “duty” that is owed by someone).” Id. at p. 49, 795 So.2d at 395. After interpreting the federal regulations as being applicable to Po-lysar under the facts presented, we held that Polysar “had a duty, as a matter of Louisiana tort law, to exercise the degree of care specified in the federal regulations.” Id. at p. 50, 795 So.2d at 396.
Similarly, while we recognize that 24 CFR § 5.703(f) may not confer a private right of action upon plaintiffs, we, nevertheless, find that as a public safety regulation, 24 CFR § 5.703(f) may be utilized in determining whether defendants violated their duties and obligations under Louisiana law. Accordingly, we find no error in the trial court’s reliance upon this federal regulation.
| ^Assignment of Error No. 4 The trial court erred in certifying a class based on a novel and untested theory of law that would require a new interpretation of 24 CFR § 5.703(f), never before litigated in any Louisiana state or federal court.
Defendants correctly point out that courts generally “will not certify a class where the theory of law involved in the case is novel and untested.” Banks v. New York Life Ins. Co., 98-0551 (La.12/07/98), 722 So.2d 990, 995. However, in the present case, the claims made against defendants’ for violations of the lease obligations are clearly premised on state law, e.g., La. C.C. art. 2691, setting forth a lessor’s obligation to make all necessary repairs, and La. C.C. art. 2696 et seq., regarding a lessor’s obligation to warrant that the premises are free of vices or defects, which would prohibit its intended use. These issues are neither novel or untested in Louisiana. Thus, we find no merit in this assignment of error.

Assignment of Error No. 5 The trial court’s judgment, which is devoid of any class definition or limits on class certift-cation, is vague and ambiguous and violates Louisiana law.

The judgment at issue states, in pertinent part:
WHEN, after considering the pleadings, testimony, evidence, law, and argument of counsel, the court finding the law and' argument to be in favor of Plaintiffs and against Defendants, for the reasons set- forth in the accompanying Reasons for Judgment,
Accordingly, for the reasons assigned, IT IS HEREBY ORDERED, ADJUDGED, AND DEGREED [sic] that Plaintiffs’ Motion to Certify a Class on the issue of liability is GRANTED.
In separate reasons for judgment, the trial judge presented a thorough 19-page analysis to support his conclusion that plaintiffs met their burden of proof pursuant to La. C.C.P. art. 591. The reasons for judgment conclude by stating: “Accordingly, for the reasons assigned, IT IS HEREBY ORDERED, ADJUDGED *287 |2oAND DEGREED [sic] that plaintiffs’ Motion to Certify a Class be and hereby is GRANTED.”
Defendants argue that based on the judgment, it is impossible to know what class is being certified because the class definition is not contained in the body of the judgment. They further assert that the judgment is unclear as to what relief was granted and what was denied. Thus, defendants request that this Court vacate the judgment and remand with instructions to the trial court to enter a judgment consistent with the reasons for judgment. We find no merit in this argument.
We recognize the well-established principle that the trial court’s written reasons form no part of the judgment. Allerton v. Broussard, 2010-2071, p. 4 (La.12/10/10), 50 So.3d 145, 147 (quoting Burmaster v. Plaquemines Parish Government, 2007-1311, p. 1 (La.8/31/07), 963 So.2d 378, 379). However, we also recognize that “it is not improper for an appellate court to consider the reasons for judgment in determining whether the trial court committed a legal error.” Winfield v. Dih, 2001-1357, p. 8 (La.App. 4 Cir. 4/24/02), 816 So.2d 942, 948. (citations omitted).
La. C.C.P. art.1918 dictates the required form of a final judgment and states, “A final judgment shall be identified as such by appropriate language. When written reasons for judgment are assigned, they shall be set out in an opinion separate from the judgment.” Furthermore, a valid judgment “must contain decretal language, and it must name the party in favor of whom the ruling is ordered, the party against whom the ruling is ordered, and the relief that is granted or denied.” Board of Sup’rs of Louisiana State University and Agricultural and Mechanical College v. Mid City Holdings, L.L.C., 2014-0506, pp. 2-3 (La.App. 4 Cir. 10/15/14), 151 So.3d 908, 910 (quoting Palumbo v. Shapiro, 2011-0769, p. 5 (La.App. 4 Cir. 12/14/11); 81 So.3d 923, 927) (citation omitted).
It is readily apparent that the judgment in the present case contains sufficient de-cretal language consistent with the reasons espoused. Thus, it is a valid appealable judgment. Moreover, by setting out his reasons for judgment in a separate opinion, the trial judge properly followed the directives of La. C.C.P. art.1918. Because the parameters of the class, including the class definition, are set forth in the accompanying reasons for judgment, and do not conflict with the judgment in any respects, we find no compelling reason to remand this matter for amendment or clarification.

Exception of Prescription

We now turn to defendants’ writ application seeking supervisory review of the trial court’s July 30, 2014 judgment, denying defendants’ exception of prescription. As previously stated, the trial court held hearings on plaintiffs’ motion to certify and on defendants’ exception of prescription. Without ruling on certification, Judge Bagneris granted the exception of prescription, which plaintiffs appealed to this Court. In our May 29, 2013. opinion vacating the trial court’s ruling on prescription, while expressing no opinion on the merits of the ruling, we stated: “Given the fact that the trial court conducted the class certification hearing, we conclude that in the interest of judicial economy the trial court should have resolved the issue of class certification before dismissing plaintiffs’ claims.” Clabome, 2012-0808, p. 6, 116 So.3d at 986. On remand, the parties submitted memoranda and participated in oral arguments before Judge Pro Tempore Exnieios on the issue of certification, and judgment was rendered granting plaintiffs’ motion for certification. One *288 month later, without notice to the parties and without | ¡^conducting a hearing on the issue of prescription, Judge Pro Tempore Exnicios rendered judgment denying defendants’ exception of prescription. In reasons for judgment, he explained: “This companion judgment takes on the second (implicit) assignment, to evaluate anew the evidence, jurisprudence, and arguments of counsel on the exception of prescription that was argued before now retired Judge Michael G. Bagneris between September 14, 2006 and February 24, 2011.”
In their writ application to this Court, defendants assert that the trial court’s ruling was procedurally improper. They submit that the exception of prescription was not pending before the court, because: 1) Judge Bagneris’ previous judgment was vacated on appeal; and 2) no party re-urged the exception of prescription after remand to the trial court. Defendants maintain that their due process rights were violated because judgment on the exception of prescription was rendered without notice and without affording them an opportunity to be heard. Defendants farther argue that Judge Pro Tempore Exnicios misinterpreted this Court’s May 29, 2013 opinion, because the opinion did not direct him to reconsider the exception of prescription but simply ordered the trial court to rule on the motion to certify.
Plaintiffs counter, arguing that Judge Pro Tempore Exnicios was within his discretion to rule on the exception of prescription based on the record that was presented to Judge Bagneris. They further argue that defendants had more than adequate opportunity to be heard, considering the fact that defendants participated in three hearings on the issue of prescription before Judge Bagneris. We disagree.
“Adequate notice is one of the most elementary requirements of procedural due process.” Vincent v. Vincent, 2011-1822, p. 13 (La.App. 4 Cir. 5/30/12), 95 So.3d 1152, 1161. “Adequate notice given must be reasonably calculated, under all the circumstances-, to apprise interested parties of the pendency of the actionj^and to afford them an opportunity to present their objections.” Id. (citation omitted). Moreover, “procedural due process requires an opportunity to be heard.” Miller v. Crescent City Health Care Ctr., 2011-0403, pp. 3-4 (La.App. 4 Cir. 11/9/11), 78 So.3d 219, 221 (citation omitted).
Defendants submit that at the February 27, 2014 status conference, the trial court set hearings and briefing schedules on the issue of class certification but never mentioned the exception of prescription and never indicated that he considered the exception to be pending. The transcript of the status conference supports this assertion. Thus, the record demonstrates that Judge Pro Tempore Exnicios ruled sua sponte on the exception of prescription without notice to the parties.
Under the circumstances, we conclude that the trial court erred by ruling on the exception of prescription without notifying the parties of his intention to do so and without affording the parties an opportunity to be heard. Thus, we grant the writ, vacate the judgment denying defendants’ exception of prescription, and remand for a properly noticed hearing following resolution of the motion for class certification in accordance with the opinion rendered in the consolidated appeal.
CONCLUSION
For the foregoing reasons, we find no error in the trial court judgment granting plaintiffs’ motion for class certification. Accordingly, we affirm.
Furthermore, defendants’ writ application is granted. We vacate the judgment denying defendants’ exception of prescrip *289 tion and remand for further proceedings consistent with this opinion.
AFFIRMED; WRIT GRANTED.

. In a parallel argument, defendant, Odyssey, separately asserts the following assignments of error: 1) The judgment granting the motion to certify on the issue of liability is vague and ambiguous on its face; 2) The judgment is unclear as to what relief was granted and what relief was denied; and 3) The trial court's class definition, while articulated in the reasons for judgment, is not contained in the judgment.