| | | |
|---|---|---|
| JANICE CLABORNE AND SHERYL JONES | * | NO. 2023-CA-0214 |
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| THE HOUSING AUTHORITY OF NEW ORLEANS | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2001-20605, DIVISION "D"
Honorable Inemesit O'Boyle, Judge
* * * * * *
**Judge Joy Cossich Lobrano**
* * * * * *
(Court composed of Judge Daniel L. Dysart, Judge Joy Cossich Lobrano, Judge Karen K. Herman)

***DYSART, J., CONCURS***

Terrill W. Boykin
Kriste Talton Utley
Alexis R. Jani
BOYKIN & UTLEY
400 Poydras Street, Suite 1540
New Orleans, LA 70130

Darleen M. Jacobs
JACOBS SARRAT & JACOBS
832 St. Louis Street
New Orleans, LA 70112

      COUNSEL FOR PLAINTIFFS/APPELLANTS

Wayne J. Lee
Heather S. Lonian
Matthew S. Almon
STONE PIGMAN WALTHER WITTMANN L.L.C.
909 Poydras Street, Suite 3150
New Orleans, LA 70112

      COUNSEL FOR DEFENDANT/APPELLEE, THE HOUSING
      AUTHORITY OF NEW ORLEANS

Warren Horn
HELLER DRAPER & HORN, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA 70130

Timothy W. Hassinger
GALLOWAY JOHNSON TOMPKINS BURR & SMITH
3 Sanctuary Blvd., 3rd Floor
Mandeville, LA 70471

      COUNSEL FOR APPELLEE, GUSTE HOMES RESIDENT
      MANAGEMENT CORPORATION

Dennis J. Phayer
BURGLASS TANKERSLEY GAUDIN PHAYER, L.L.C.
5213 Airline Drive
Metairie, LA 70001

      COUNSEL FOR APPELLEE, B.W. COOPER RESIDENT
      MANAGEMENT CORPORATION

John W. Hite, III
David P. Salley
Glen E. Mercer
SALLEY HITE MERCER & RESOR, LLC
365 Canal Street, Suite 1710
New Orleans, LA 70130

Juston M. O'Brien
McGLINCHEY STAFFORD, PLLC
One American Place, 14th Floor
Baton Rouge, LA 70825

Wayne R. Maldonado
Alex J. Granier
UNGARINO & MALDONADO, LLC
3850 North Causeway Blvd., Suite 1280
Metairie, LA 70002

      COUNSEL FOR APPELLEE, PENN AMERICA INSURANCE
      COMPANY

**REVERSED; RENDERED IN PART;**
**NEW TRIAL GRANTED IN PART;**
**AND REMANDED**

**MARCH 21, 2024**

JCL

KKH

This is a class action case[1] in which Plaintiffs[2] brought claims for damages arising from mold exposure in public housing developments. The present appeal involves Resident Management Agreements ("RMAs") between Guste Homes Resident Management Corporation ("Guste") and B.W. Cooper Resident Management Corporation ("Cooper") (collectively "the RMCs") and the Housing Authority of New Orleans ("HANO") and Lease Agreements between HANO and Plaintiffs ("Leases"). Plaintiffs appeal the jury's verdict in the Phase One liability trial, which dismissed with prejudice the entirety of Plaintiffs' claims against Guste, Cooper, and their liability insurer, Penn America Insurance Company ("Penn America"). The verdict was reduced to judgment in the district court's December 5, 2022 Final Judgment for Phase One. For the reasons that follow, we

---

[1] "A class action is a nontraditional litigation procedure which permits a representative with typical claims to sue or defend on behalf of, and stand in judgment for, a class of similarly situated persons when the question is one of common interest to persons so numerous as to make it impracticable to bring them all before the court." *Claborne v. Hous. Auth. of New Orleans*, 14-1050, p. 5 (La. App. 4 Cir. 4/15/15), 165 So.3d 268, 276 (internal citations omitted). "The purpose and intent of class action procedure is to adjudicate and obtain *res judicata* effect on all common issues applicable not only to persons who bring the action, but to all others who are 'similarly situated.'" *Id.* In a class action procedure, representatives with typical claims sue on behalf of, and stand in judgment for, a class of similarly situated persons. *Id.*

[2] In the opinion, class representatives will sometimes be referred to as "Plaintiffs" and the putative class or those similarly situated and Plaintiffs will be sometimes collectively referred to as "Tenants."

1

reverse; we render judgment finding that, as a matter of law, Cooper and Guste had both a duty and obligation to the Tenants to maintain their respective housing development free of mold; and we remand the remaining Phase One liability issues for a new trial.

## FACTS AND PROCEDURAL HISTORY

Plaintiffs filed this class action on December 17, 2001, on behalf of themselves and others similarly situated, against both HANO and the RMCs for damages related to their exposure to mold while living in a public housing development ("Development") owned and operated by HANO and managed by the RMCs, tenant-comprised entities.[3] Plaintiffs also brought a direct action against Penn America Insurance Company ("Penn America"), the liability insurer for Cooper and Guste.[4]

In 2014, the district court certified the following class:

> [A]ll leaseholders and other permanent residents of THE HOUSING AUTHORITY OF NEW ORLEANS, from 1998 who were adversely affected by the presence of toxic mold in their apartments as a result of HANO, Guste or B.W. Cooper Resident Management Corporations' ("RMC") breach of their contractual duty with HUD pursuant to 24 CFR Part 5, § 5.703(f) to maintain said apartments and common areas "free of mold" for the benefit of HANO, Guste RMC or Cooper RMC's leaseholders and their permanent residents.

---

[3] For a more detailed version of the factual basis and procedural history of this matter, one may consult *Claborne v. Hous. Auth. of New Orleans*, 12-0808 (La. App. 4 Cir. 5/29/13), 116 So.3d 983, *Claborne*, 14-1050, 165 So.3d 268, and *Claborne v. Hous. Auth. of New Orleans*, 23-0182 (La. App. 4 Cir. 12/20/23), --- So.3d ----, 2023 WL 8798481, *writ denied*, 24-00116 (La. 3/12/24), --- So.3d ----, 2024 WL 1068326.

[4] Plaintiffs settled with various insurers who provided coverage to the RMCs during certain policy periods. Per terms of the settlement, the settling insurers were dismissed and released along with Cooper and Guste only with respect to the specific policy periods during which the RMCs were insured by these same settling insurers. The claims reserved against the RMCs, and not dismissed per the settlement, proceeded to the Phase One trial.

The Leases obligate HANO to "maintain the dwelling unit and the project in a condition that is decent, safe, sanitary, and in good repair . . . complying with the requirements of applicable building codes, housing codes, Uniform Physical Condition Standards and other HUD regulations materially affecting health and safety."

While the RMAs require HANO to perform non-routine and extraordinary repairs, the RMCs are to perform routine inspections and maintenance "repairing any damage to the Development to ensure that the Development is kept in a decent, safe and sanitary condition" and "to enforce all rules, regulations and procedures applicable to public housing" including applicable "policies, and procedures promulgated by HUD or HANO . . . in accordance with HQS/UPSI, PHAS or alternate policy and in accordance with all local building and housing codes."

Plaintiffs allege that the RMCs assumed a duty under the Leases and/or were obligated to Tenants as third party beneficiaries under the RMAs to maintain their apartments in a safe living condition, including a mold-free environment.

The class action was bifurcated into a Phase One trial, the liability portion of the class action, and a Phase Two trial, the damages portion, as follows:

> In Phase 1, the liability issues (e.g. the meaning of "free of mold" as a contractual obligation, whether HANO & the other management defendants factually breached a duty to provide a mold-free environment for the leaseholders (and their permanent domiciliaries) by failing to repair the structural problems allowing water intrusions for purposes of the negligence cause of action; whether the omission and resulting water intrusions in the apartments led to unchecked mold proliferation, whether the documented presence of mold generally has been proven to cause the personal injuries plaintiffs allegedly suffered, and whether the documented instances of mold rise to the level of a nuisance as would be more than a neighbor should be expected to bear by a

reasonable person's standard) will be presented on a class basis in a 'first phase' trial.

If the first phase trial results in a "liability" verdict finding that the defendants breached their duty of care, which led to proof of general causation of mold-induced property damage, personal injuries and/or nuisance, the class action will decertify or splinter into a "second phase" to allow the plaintiffs and all putative plaintiffs to individually present their specific causation and damage claims. During this second phase, defendants will also have the opportunity to present individualized evidence as to each individual's comparative negligence in contributing to the mold.

The class certification was affirmed on appeal in April of 2015. *See Claorne v. Hous. Auth. of New Orleans*, 14-1050 (La. App. 4 Cir. 4/15/15), 165 So.3d 268.

In early 2020, Plaintiffs and HANO filed cross motions for summary judgment on the issue of liability. By judgment dated August 12, 2020, the district court granted Plaintiffs' motion, finding that "Plaintiffs have proven a class-wide breach of contract claim consistent with the class definition rendering HANO liable to each class member who suffered damages as a result of the recurring mold in their apartments." The district court denied HANO's cross motion for summary judgment.[5] By order dated February 17, 2022, the district court set a Phase One jury trial on the issue of liability of the RMCs and on Plaintiffs' direct action claim against Penn America. HANO was not allowed to substantively participate in the Phase One trial.[6]

---

[5] The judgment on the cross motions for summary judgment was affirmed on appeal. *See Claorne*, 23-0182, --- So.3d ----, 2023 WL 8798481 (Lobrano J., dissenting in part, as genuine issues of material fact exist as to breach, general causation, and cause-in-fact noting that "mold growth can be influenced by a variety of factors . . . [and] [t]his complexity, coupled with the microscopic nature of mold, makes it challenging to pinpoint a single cause, which creates genuine issues of material fact not conducive to a summary judgment proceeding.").

[6] This Court dismissed HANO's appeal of the order prohibiting it from participating in the Phase One trial, finding no appellate jurisdiction over the particular issues raised. *Claorne v. Hous. Auth. of New Orleans*, 23-0206 (La. App. 4 Cir. 1/19/24), --- So.3d ----, 2024 WL 208173.

4

The Phase One liability trial proceeded against the RMCs and Penn America on October 17, 2022 and lasted four days. During trial, prior to submitting the case to the jury, Plaintiffs moved for a partial directed verdict on the issues of duty/obligation and breach of duty/obligation. Plaintiffs argued that only the issues relating to causation should go to the jury. The district court denied the motion for a directed verdict. The jury was presented with various questions on the verdict form regarding:

- duty/obligation
  - Do you find that the RMCs had a duty and/or obligation to maintain their respective public housing development "free of mold"?

- breach of duty/obligation
  - Do you find that the RMCs breached their respective duty and/or obligation to provide a "mold-free environment" for the class representatives?

- general causation as to damages
  - Do you find that the mold in the public housing developments was capable of causing humiliation, anxiety, embarrassment, mental anguish, property damage and/or nuisance to the general population?

- cause-in-fact as to fault
  - Do you find that the RMCs' breaches of their duties and/or obligations to the class representatives were a cause-in-fact of humiliation, anxiety, embarrassment, mental anguish, property damage and/or nuisance experienced by the class representatives?[7]

After deliberating, the jury answered the duty/obligation questions in the negative as to both RMCs, finding that neither Cooper nor Guste had a duty or obligation to maintain their respective housing development free of mold. Thus, the verdict form did not require the jury to answer any of the remaining questions as to breach, general causation, and cause-in-fact. Consequently, the jury dismissed

---

[7] The following questions were also presented to the jury on the verdict form but are in no need for resolution at this juncture: (1) Do you find the RMCs engaged in a pattern of ongoing, repeated conduct that continuously breached their duty to provide a mold-free environment for the class representatives? and (2) Do you find the RMCs' continuous breach of their duty to provide a mold-free environment resulted in continuing harm to the class representatives?

Plaintiffs' claims against Guste, Cooper, and Penn America, and the verdict was reduced to judgment in the district court's December 5, 2022 Final Judgment for Phase One. The district court denied Plaintiffs' motion for judgment notwithstanding the verdict and/or new trial. This appeal followed.

## LAW AND ANALYSIS

**Assignments of Error and Issues Presented for Review**

Plaintiffs' primary argument is that the district court erred in failing to find, as a matter of law, that Cooper and Guste owed a duty and/or obligation to Tenants to keep their respective housing development free of mold.[8] According to Plaintiffs, the district court erred in declining to rule on legal issues of duty and obligation on directed verdict, and instead, allowed those questions of law to be presented to the jury, which the jury then erred in answering. We find merit in these assignments of error.[9]

---

[8] The Plaintiffs set forth this argument in their assignments of error as follows:

> 1. The trial court erred in declining to rule on legal issues of duty and obligation on directed verdict and allowing the issues to be presented to the jury.

> 2. Both the trial court and the jury erred in failing to find that B.W. Cooper RMC owed a duty and/or obligation to Appellants/Plaintiffs/Residents.

> 3. Both the trial court and the jury erred in failing to find that Guste Homes RMC owed a duty and/or obligation to Appellants/Plaintiffs/Residents.

[9] The following errors were also assigned by Plaintiffs:

> 4. The trial court erred in allowing the RMCs to make and/or benefit from incorrect, confusing, misleading, and prejudicial arguments to the jury which were not supported by the law or evidence;

> 5. The trial court erred in failing to strike two prospective jurors for cause because said jurors had formed opinions in the case or were not otherwise impartial, the cause of their bias being

**Standard of Review**

Generally, a jury's factual finding cannot be set aside unless the appellate court finds that it is manifestly erroneous or clearly wrong. *Lam v. State Farm Mut. Auto. Ins. Co.*, 05-1139, p. 3 (La. 11/29/06), 946 So.2d 133, 135 (citing *Stobart v. State through Dept. of Transp. and Dev.*, 617 So.2d 880, 882 (La. 1993)). However, where legal error has interdicted the fact-finding process, the manifest error standard no longer applies and, if the record is complete, the appellate court should make its own *de novo* review of the record. *Id.* (citing *Evans v. Lungrin*, 97-0541, pp. 6-7 (La. 2/6/98), 708 So.2d 731, 735).

Whether a duty is owed is a question of law, where "the inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from the general principles of fault) to support that the defendant owed him a duty." *Lemann v. Essen Lane Daiquiris, Inc.,* 05-1095, p. 8 (La. 3/10/06), 923 So.2d 627, 633. Likewise, when a contract can be construed from "the four corners of the instrument without the necessity of looking to extrinsic evidence," the question of contractual interpretation is answered as a matter of law. *New Orleans Jazz & Heritage Found., Inc. v. Kirksey*, 09-1433, p. 9 (La. App. 4 Cir. 5/26/10), 40 So.3d 394, 401. Appellate courts review questions of law *de novo* to determine whether the lower court was legally correct or incorrect, giving no deference to the legal

---

immaterial to the case at hand in contradiction to La. C.C.P. art. 1765; and

6. The trial court erred in striking a prospective juror for cause because she lived in a housing development though she did not live in any of the subject housing developments and/or in a housing development managed by either of the RMCs at issue in the present case.

These assignments of error are moot because we find that whether the RMCs owed a duty/obligation should have been determined by the trial court, reverse the jury verdict and trial court judgment finding no duty, and render judgment with respect to duty/obligation.

conclusions of the lower court. *Hand v. City of New Orleans*, 04-0845, p. 5 (La. App. 4 Cir. 12/22/04), 892 So.2d 609, 612.

**Contractual Obligation – Stipulation *Pour Autrui***

Plaintiffs contend, and we agree, that the RMCs assumed a duty and were obligated to the Tenants as third party beneficiaries under the RMAs to maintain their apartments in a safe living condition, including a mold-free environment. The Leases obligate HANO to "maintain the dwelling unit and the project in a condition that is decent, safe, sanitary, and in good repair . . . complying with the requirements of applicable building codes, housing codes, Uniform Physical Condition Standards and other HUD regulations materially affecting health and safety." The RMAs between HANO and the RMCs obligate HANO to perform non-routine and extraordinary repairs while the RMCs are obligated to perform routine inspections and maintenance "repairing any damage to the Development to ensure that the Development is kept in a decent, safe and sanitary condition" and "to enforce all rules, regulations and procedures applicable to public housing" including applicable "policies, and procedures promulgated by HUD or HANO . . . in accordance with HQS/UPSI, PHAS or alternate policy and in accordance with all local building and housing codes." Under HUD housing regulations applicable to public housing, 24 CFR § 5.703 provided that "HUD housing must be decent, safe, sanitary and in good repair," and 24 CFR § 5.703(f) specifically required that a housing development's dwelling units and common areas be "free of mold."[10]

---

[10] 24 CFR § 5.703 was revised in 2023. The prior version of the regulation, which was in effect at all times pertinent to this litigation, is quoted in *Claborne*, 14-1050, pp. 10-11, 165 So.3d at 279-80.

Ordinarily, no action for breach of contract may lie in the absence of privity of contract between the parties. *Rivnor Properties v. Hebert O'Donnell, Inc.*, 92-1103 (La. App. 5 Cir. 1/12/94), 633 So.2d 735, 742; *see also Dennis v. Copelin*, 94-2002, p. 9 (La. App. 4 Cir. 2/1/96), 669 So.2d 556, 561)("One who is not a party to a contract has no claim for the breach of it, as that right belongs to the obligee."). Despite the absence of a direct contractual relationship between the Plaintiffs and the RMCs, the Louisiana Civil Code conveys the broader principle that contracts intended to benefit third parties can confer enforceable rights upon those beneficiaries. The RMAs between HANO and the RMCs clearly delineate the RMCs' responsibilities for maintenance and repair—duties that, by their very nature, directly impact Tenant safety and well-being.[11] By failing to consider the intent of these contracts to ensure habitable living conditions, the lower court's judgment denies the Plaintiffs a remedy for their legitimate grievances.

Furthermore, the district court's rejection of the argument that the RMAs constituted stipulations *pour autrui* fails to appreciate the essence of third-party beneficiary rights. The law does not require an explicit stipulation for a third party to benefit from a contract; it suffices that the contract clearly intends such benefit. The maintenance and repair obligations outlined in the RMAs unmistakably intended to benefit the Tenants. La. C.C. art. 1978 provides:

> A contracting party may stipulate a benefit for the third person called a third party beneficiary.
>
> Once the third party has manifested his intention to avail himself of the benefit, the parties may not dissolve the

---

[11] Appellees argue that the provision contained in the RMAs making HANO responsible for extraordinary repairs "carved out" an exception to any obligation imposed on the RMCs under the RMAs to provide mold-free housing. We find nothing in the RMAs to support that argument. Whether, and the extent to which, mold resulted from the failure to perform extraordinary repairs attributable to HANO or the failure to perform routine repairs attributable to Cooper and Guste relates to causation, not duty.

contract by mutual consent without the beneficiary's agreement.

Under Louisiana law, such a contract is commonly referred to as a "stipulation *pour autrui*." *Whitney Nat'l Bank v. Howard Weil Fin. Corp.*, 93-1568 (La. App. 4th Cir. 1/27/94), 631 So.2d 1308, 1310. Such a stipulation gives the third party beneficiary the right to demand performance from the promisor. *Id.* (citing La. C.C. art. 1981). The third party beneficiary may also enforce the contract by filing suit to recover damages arising from breach of the contract. *See Beau Box Com. Real Est., L.L.C. v. Pennywise Sols., Inc.*, 19-0114, pp. 6-7 (La. App. 1 Cir. 10/23/19), 289 So.3d 600, 604; *Hazelwood Farm, Inc. v. Liberty Oil & Gas Corp.*, 01-0345, pp. 11-12 (La. App. 3 Cir. 6/20/01), 790 So.2d 93, 100-01; La. C.C. art. 1994 ("An obligor is liable for the damages caused by his failure to perform a conventional obligation.").

In *Joseph v. Hosp. Serv. Dist. No. 2 of Parish of St. Mary*, 05-2364, pp. 8-9 (La. 10/15/06), 939 So.2d 1206, 1212, the Supreme Court held that there are three criteria for determining whether contracting parties have provided a benefit for a third party: (1) the stipulation for a third party is manifestly clear; (2) there is certainty as to the benefit provided the third party; and (3) the benefit is not a mere incident of the contract between the promisor and the promisee.

The most basic requirement of a stipulation *pour autrui* is that the contract manifest a clear intention to benefit the third party; absent such a clear manifestation, a party claiming to be a third party beneficiary cannot meet his burden of proof. *Joseph*, 05-2364, p. 9, 939 So.2d at 1212. A stipulation *pour autrui* is never presumed. *Id.* The party claiming the benefit bears the burden of proof. *Id.*; La. C.C. art. 1831. The second factor, certainty as to the benefit

provided, is a corollary of the requirement of a manifestly clear stipulation. *Joseph*, 05-2364, p. 9, 939 So.2d at 1212. "To create a legal obligation enforceable by the beneficiary there must be certainty as to the benefit to accrue to the beneficiary." *Id.* (citing *Berry v. Berry*, 371 So.2d 1346, 1347 (La. App. 1st Cir. 1979)). The third requirement is that the benefit cannot be a mere incident of the contract. *Id.*

The evidence in the record establishes the intent in the case *sub judice*. The contract manifests a clear intention to benefit a third party – Plaintiffs.

Appellees argue that Plaintiffs are merely "incidental beneficiaries" of the RMAs and cite *Joseph* in support of their argument. In *Joseph*, a contract existed between a hospital and a medical corporation for the medical corporation's doctors to provide anesthesia services to the hospital. When the hospital terminated the contract, individual doctors in the medical corporation sought to enforce it as intended third-party beneficiaries. *Joseph*, 05-2364, p. 3, 939 So.2d at 1209. The Supreme Court held that the doctors were not intended third-party beneficiaries under the contract even though they "perform[ed] the services to satisfy the contractual obligation of the corporation." *Id.*, 05-2364, pp. 11-12, 939 So.2d at 1214-15. It stated that "all corporations act through individuals[,]" but that the breach of contract claim was "to be asserted by the corporation, not the employees, officers or shareholders." *Id.*, 05-2364, p. 14, 939 So.2d at 1215. In denying third party beneficiary status to the doctors, the Court analyzed "incidental benefits" as follows:

> In *Allen & Currey Mfg. Co. v. Shreveport Waterworks Co.,* 113 La. 1091, 37 So. 980 (1905), a water company entered into a contract with the city to furnish water and maintain hydrants in good repair. The plaintiff sued the water company for damages sustained as a result of the

> loss of its building due to fire because of an alleged breach of the water company's obligation to maintain the hydrants. The supreme court held that the plaintiff had no right of action. The contract was between the city and the water company. The plaintiff, as an inhabitant of the city, was an incidental beneficiary[] and as such had no right of action.

*Id.*, 05-2364, pp. 10-11, 939 So.2d at 1213 (internal footnote and citation omitted).

The present case is distinguishable from *Joseph* and *Allen*. Instead, this case is more similar to *Williams v. City of New Orleans*, 15-0769, p. 6 (La. App. 4 Cir. 4/20/16), 193 So.3d 259, 264. In *Williams*, the contract between the City of New Orleans and the demolition contractor stated that the demolition contractor would repair damage caused during demolitions. 15-0769, p. 1, 193 So.3d at 261. A townhouse, owned by the plaintiff, a third party property owner, was demolished during the demolition of a neighbor's townhouse. *Id.*, 15-0769, p. 1, 193 So.3d at 261-62. This Court held that a stipulation in favor of other property owners met the criteria for finding a stipulation *pour autrui*. *Id.* In determining that the benefit to the plaintiff-property owner was not merely incidental, this Court specifically noted:

> The benefit of requiring [the demolition contractor] to repair the damage caused by its demolitions is not incidental to the contract. It is undisputed that the duty was written into the contract. An example of an incidental benefit would be the third party property owners having cleaner surrounding property because the condemned properties were demolished and hauled away.

*Id.*, 15-0769, p. 10, 193 So.3d at 266.

This Court, therefore, found that the plaintiff-property owner was a third party beneficiary to the contract between the City of New Orleans and the demolition contractor. *Id.*

We find *Williams'* reasoning instructive in determining the issues on appeal. Similarly, herein, Plaintiffs were not merely incidental beneficiaries of the RMAs entered into between HANO and the RMCs; rather, they were third party beneficiaries of the agreements. As such, the RMCs had a contractual obligation under the RMAs through a third party beneficiary application to maintain the developments free of mold, and Plaintiffs have the right to demand performance from Cooper and Guste under the agreements and seek damages for any losses suffered due to failure to perform the agreed-upon repairs.

**Duty in Tort**

Moreover, the district court erred in finding that the RMCs owed the Tenants no duty arising in tort. The district court's order, bifurcating the trial into two phases, expressly contemplated that the jury would consider questions of negligence.[12] It is well-settled under Louisiana law that the same acts or omissions may constitute breaches of both general duties and contractual duties and may give rise to both actions in tort and actions in contract. *FIE, LLC v. New Jax Condo Ass'n, Inc.*, 16-0843, p. 18 (La. App. 4 Cir. 2/21/18), 241 So.3d 372, 389 (citing *Dubin v. Dubin*, 25,996, p. 5 (La. App. 2 Cir. 8/17/94), 641 So.2d 1036, 1039-40; *Ridge Oak Dev., Inc. v Murphy*, 94-0025, p. 4 (La. App. 4 Cir. 6/30/94), 641 So.2d 586, 588; *Borden, Inc. v. Howard Trucking Co., Inc.*, 454 So.2d 1081, 1096 (La. 1983)).[13] Whether the defendant owed the plaintiff a duty is a threshold issue in

---

[12] The jury instructions also explained the legal standard for negligence.

[13] A plaintiff may assert both actions and is not required to plead the theory of his case. *In re St. Louis Encephalitis Outbreak*, 41,250, p. 4 (La. App. 2 Cir. 9/1/06), 939 So.2d 563, 567. The classical distinction between "damages *ex contractu*" and "damages *ex delicto*" is that the former flow from the breach of a special obligation contractually assumed by the obligor, whereas the latter flow from the violation of a general duty owed to all persons. *Dubin*, 25,996, p. 5, 641 So.2d at 1040. Generally, where a person neglects to do what he is obligated to do under a contract, he has committed a passive breach of the contract. *Id.* If he negligently performs a

any negligence action. *Id.*, 16-0843, p. 23, 241 So.3d at 391-92. Duty is a question of law, reviewed *de novo* on appeal, where "the inquiry is whether the plaintiff has any law-statutory, jurisprudential, or arising from general principles of fault-to support his claim." *Ogea v. Merritt*, 13-1085, p. 24 (La. 12/10/13), 130 So.3d 888, 905.

By the terms of the RMAs, Cooper and Guste agreed to maintain their respective housing development in a safe, decent, and sanitary condition and to comply with the rules, regulations, and procedures promulgated by HUD applicable to public housing. Those HUD regulations explicitly stated that "HUD housing must be decent, safe, sanitary and in good repair," and a housing development's dwelling units and common areas must be "free of mold." *See Claborne*, 14-1050, pp. 10-11, 165 So.3d at 279-80 (quoting 24 CFR § 5.703).

Cooper's judicial confessions were read to the jury at trial, admitting that:

> (5) B.W. Cooper Resident Management Corporation's agreements (management contracts) with HANO from at least 1998 to 2005 provided that the RMC would perform the management duties and obligations of HANO as set forth in HANO's leases with the tenants/occupants of the B.W. Cooper housing development from 1995 through 2005, which included, but is not limited to:
>
> (A) all of the duties and responsibilities normally associated with the management of the public housing; further including, but not limited to, maintaining the development, including buildings, units, grounds and common areas according to standards acceptable to HANO and HUD, but not less than what was contractually required of HANO and/or HUD.

---

contractual obligation, he has committed active negligence and thus an active breach of the contract. *Id.*, 25,996, pp. 5-6, 641 So.2d at 1040 (citing *Huggs, Inc. v. LPC Energy, Inc.*, 889 F.2d 649, 655 (5th Cir. 1989); *Hennessy v. South Central Bell Telephone Co.,* 382 So.2d 1044, 1045 (La. App. 2d Cir. 1980)). A passive breach of contract warrants only an action for breach of contract; an active breach of contract, on the other hand, may also support an action in tort under La. C.C. art. 2315. *Id.*

> (B) to perform and institute routine and non-routine maintenance programs, including repairs of any damage, including, but not limited to, keeping the development in a decent, safe and sanitary condition. Further including, but not limited to, free of mold.

Cynthia Wiggins, Guste's CEO, testified that Guste was bound under the RMAs to follow HUD regulations, including 24 C.F.R. § 5.703:

> Q. Did the RMC under this contract administer, operate, and manage the development on a day-to-day basis?
>
> A. Yes, we did.
>
> Q. Under both contracts, starting January 1st of 2000, the resident management corporation took custody and control over Guste Homes development to manage it?
>
> A. Yes.
>
> Q. Again, HUD regulation is 1 through 1700. Again, you're required to operate and manage the development in a safe, decent, and sanitary condition; correct?
>
> A. Correct.
>
> Q. And, again, the development should be maintained in accordance with the standards applicable to public housing; correct?
>
> A. Correct.
>
> Q. And that also includes the CFR that we looked at --
>
> A. Correct.
>
> Q. -- 5.703? . . .
>
> A. Yes.

The Louisiana Civil Code provides that "[e]very act whatever of man that causes damage to another obliges him by those whose fault it happened to repair it." La. C.C. art. 2315. "Generally, duty is defined as the obligation to conform to the standard of conduct associated with a reasonable man in like circumstances."

*Fox v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll.*, 576 So.2d 978, 981 (La. 1991). "There is an almost universal duty on the part of the defendant in negligence cases to use reasonable care so as to avoid injury to another." *Boykin v. Louisiana Transit Co., Inc.*, 96-1932, p. 10 (La. 3/4/98), 707 So.2d 1225, 1231.

In deciding whether to impose a duty in a particular case, the court "must make a policy decision in light of the unique facts and circumstances presented." *In re New Orleans Train Car Leakage Fire Litig.*, 00-0479, p. 47 (La. App. 4 Cir. 6/27/01), 795 So.2d 364, 394. The court may take "various moral, social, and economic factors" into account when determining whether to impose a duty. *Id.* These factors include: (1) "the fairness of imposing liability;" (2) "the economic impact on the defendant and on similarly situated parties;" (3) "the need for an incentive to prevent future harm;" (4) "the nature of defendant's activity;" (5) "the potential for an unmanageable flow of litigation;" (6) "the historical development of precedent;" and (7) "the direction in which society and its institutions are evolving." *Id.* Overall, finding a duty is dependent on the "facts and circumstances of the case and the relationship of the parties." *Fox*, 576 So.2d at 981.

This Court has recognized that "public safety regulations . . . issued by an agency presumed to have expertise in the relevant subject matter and statutorily-charged with protecting public safety, are very useful in determining the standard of care applicable in a negligence action (i.e. defining the 'duty' that is owed by someone)." *In re New Orleans Train Car Leakage Fire Litig.*, 00-0479, p. 49, 795 So.2d at 395. Further, it has found that a defendant governed by federal safety regulations "ha[s] a duty, as a matter of Louisiana tort law, to exercise the degree of care specified in the . . . regulations." *Id.*, 00-0479, p. 50, 795 So.2d at 396.

Specifically, this Court has already recognized that, "as a public safety regulation, 24 CFR § 5.703(f) may be utilized in determining whether defendants violated their duties and obligations under Louisiana law." *Claborne*, 14-1050, p. 21, 165 So.3d at 286.

On the record before this Court, we find that the jury's verdict lacks a sufficient factual and legal basis to absolve the RMCs of responsibility for the Plaintiffs' injuries. If left undisturbed, the district court judgment would not only leave the Plaintiffs without recourse but also set a concerning precedent that may undermine the protections afforded to public housing tenants under our legal system. The RMCs, by virtue of their contractual obligations to HANO, owe an obligation to the Tenants that cannot be so easily dismissed. Consequently, for these reasons, we find that Cooper and Guste owed a duty/obligation under tort and contract principles to maintain their respective housing development free from mold.[14]

**Remand**

Typically, when the jury fails to make a determination and if the record is complete, the appellate court should make its own independent *de novo* review of the record. *Landry v. Bellanger*, 02-1443, p. 15 (La. 5/20/03), 851 So.2d 943, 954; *Ferrell v. Fireman's Fund Ins. Co.*, 94-1252, pp. 3-4 (La. 2/20/95), 650 So.2d 742,

---

[14] This court found that HANO owed an obligation to the Tenants under the Leases. *See Claborne*, 23-0182, --- So.3d ----, 2023 WL 8798481 (upholding summary judgment as to HANO's contractual liability and reserving individual damages for Phase Two of the class action) (Lobrano J., dissenting in part). Given the context of public housing, there is a strong policy reason for ensuring that both owners and resident management companies adhere strictly to their repair obligations, to protect the health and safety of residents. When a contract allocates specific obligations for repairs (extraordinary repairs to the owner and routine repairs to the management company) referencing laws (statutory, jurisprudential, or arising from the general principles of fault), such a contractual arrangement can influence the analysis of duty in tort law and scope of contractual obligation. Imposing a duty of care in tort that aligns with contractual obligations and laws encourages entities to diligently fulfill their contractual duties, knowing that failure to do so in certain circumstances could result in tortious liability.

17

745; *Ragas v. Argonaut Southwest Insurance Co.,* 388 So.2d 707, 708 (La. 1980). However, the Supreme Court has also recognized that *de novo* review is not the best course of action in every case. *Ragas*, 388 So.2d at 708. The authority for an appellate court to remand a case to the trial court for proper consideration, where it is necessary to reach a just decision and to prevent a miscarriage of justice, is conferred by La. C.C.P. art. 2164. Whether a particular case should be remanded is a matter that is vested largely within the court's discretion and depends upon the circumstances of the case. *See Wegener v. Lafayette Ins. Co.*, 10-0810, pp. 19-20 (La. 3/15/11), 60 So.3d 1220, 1233-34 (citing *Alex v. Rayne Concrete Service*, 05-1457, p. 23 (La. 1/26/07), 951 So.2d 138, 155).

We find that various issues that the jury failed to resolve at the trial regarding breach of duty/obligation, general causation as to damages, and cause-in-fact as to fault are fact-sensitive, require a mix of legal and factual determinations, overlap, and should be tried together. This Court cannot fairly find a preponderance of the evidence from the cold record with respect to these interrelated factual issues. A new trial is necessary for a trier of fact to make various determinations, particularly: (1) the allocation of fault and scope of duty/obligation between the RMCs and HANO; (2) whether the conditions for which HANO was held liable were the results of acts or omissions by the RMCs in their respective capacities as managers under the RMAs resulting in water intrusions in the apartments which led to unchecked mold proliferation; (3) whether, and the extent to which, mold resulted from the failure to perform extraordinary repairs attributable to HANO or the failure to perform routine repairs attributable to Cooper and Guste; and (4) any other issues relating to the relationship between HANO and the RMCs, including any applicability of Chapter

3 of Title 40 of the Louisiana Revised Statutes entitled "Louisiana Housing Authorities Law."

The record shows that mold growth can be influenced by a variety of factors, including structural issues (poor ventilation or water leaks) and lack of routine maintenance (minor leaks or dampness). Both types of failures – extraordinary and routine maintenance – can collectively contribute to a mold problem. For example, structural defects (HANO's responsibility) may have created conditions conducive to mold growth, while inadequate routine care (the RMCs' responsibility) may have exacerbated or failed to mitigate the issue. This complexity, coupled with the microscopic nature of mold, makes it challenging to pinpoint a single cause, which involve mixed questions of law and fact. The responsibilities of the Tenants, HANO, and the RMCs overlap or interact, further complicating a causation analysis and require a trier of fact to determine such issues consistent with the view that the RMCs may bear a share of the liability for the harm suffered by the Plaintiffs due to the mold infestation at the public housing developments. A view of the witnesses is essential to a fair resolution of conflicting evidence, and a trier of fact is in a better position to allocate fault, which will require an assessment of causation under both tort (negligence) and contract (breach of contract) laws and an analysis of the legal duties and obligations owed by HANO and the RMCs to Tenants.

Therefore, with respect to breach of duty/obligation, general causation as to damages, and cause-in-fact as to fault, we grant a new trial and remand these matters.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the district court dismissing Plaintiffs' claims against Cooper, Guste, and Penn American, render judgment against Cooper and Guste with respect to duty/obligation,[15] and remand for a new trial of the remaining issues of breach of duty/obligation, general causation, and cause-in-fact in the liability phase of the trial.

**REVERSED; RENDERED IN PART;
NEW TRIAL GRANTED IN PART;
AND REMANDED**

---

[15] We find all other theories of liability set forth in Plaintiffs' petitions are without merit, abandoned, moot, and/or dismissed.